[No. 8442.   Department Two.   March 26, 1910.]

R. J. HUSTON, *Appellant*, v. HILEN HARRINGTON, *Respondent*.[1]

SPECIFIC PERFORMANCE—CONTRACTS—UNCERTAINTY—PRINCIPAL AND AGENT. A contract whereby defendant agreed to sell certain corporate stock to the plaintiff, or to whomsoever he may direct, for the sum of not less than $30,000 and as much more as it may be sold for to any other person than the plaintiff, is one of agency, in which the price is left uncertain where no sale was made to a third person, and therefore cannot be specifically enforced.

SAME—CONTRACTS—CONFIDENTIAL RELATION. A contract by defendant to sell to plaintiff certain corporate stock will not be specifically enforced where the plaintiff was acting as defendant's confidential agent in sole charge of the business, and failed to fully inform the defendant of the condition of the property and of an increase in its rental value, and part of the tender to defendant was from money belonging to the corporation paid in advance upon such increased rentals.

Appeal from a judgment of the superior court for King county, Main, J., entered June 17, 1909, in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action for specific performance. Affirmed.

*Austin E. Griffiths* (*Paul Shaffrath*, of counsel), for appellant.

*Shank & Smith* and *James McNeny*, for respondent.

[1]Reported in 107 Pac. 874.

MOUNT, J.—This action was brought by the appellant to enforce specific performance of a written contract. The cause was tried upon its merits. The trial court dismissed the plaintiff's action, and awarded an affirmative judgment in favor of the defendant. No findings of fact were made by the trial court. The plaintiff appeals.

The contract is a follows:

"In consideration of fifty ($50) dollars, receipt whereof is hereby acknowledged, I do agree to sell to R. J. Huston or to whomsoever he may direct, my entire stock and all my interest in Vashon Investment Co. Inc., at any time within six months from this date or thereafter until I shall have given him ten days' notice in writing to the contrary, and upon the payment to me of the sum of not less than thirty thousand ($30,000) dollars and as much more than said sum as said stock and interest may be sold for to any person other than the said R. J. Huston. The payment of said sum of thirty thousand ($30,000) dollars or more to be not less than half cash and the balance in two equal annual payments with interest thereon, at seven per cent per annum, payable semi-annually. I further agree that the said R. J. Huston shall have the privilege to take for himself or sell to another all of my said stock and all interest in and to said Vashon Investment Co. at the price and upon the terms as above provided and in either event to allow him the usual commission of five per cent on the first ten thousand ($10,000) dollars of the purchase price and two and one-half per cent on the balance of said purchase price. It is understood that the property of the Vashon Investment Co. is a certain lease-hold interest upon lot seven block, twenty-four of the A. A. Denny's addition to the city of Seattle. Said lease executed by Morgan J. Carkeek and wife in favor of Hilen Harrington for a period of twenty-five years, bearing date April 1, 1905, and I further agree to execute any assignment of said lease that may be necessary or required by the purchaser to validate the sale above provided for.

"Dated at Seattle this 2nd of November 1908.

"Hilen Harrington."

It is not claimed by the appellant that the property was sold to any other person, but it is claimed that this is a

specific agreement to sell to R. J. Huston for $30,000. It is shown that Mr. Huston tendered to respondent on March 22, 1899, $15,000 in cash, together with two notes for $7,500 each, due in one and two years, and that respondent refused the tender. The evidence also shows that before the tender was made, respondent offered to take from Mr. Huston $30,000 for the stock, but in addition thereto respondent insisted that he was entitled to the earnings on the stock up to that time. Mr. Huston insisted that the earnings followed the stock. They disagreed upon this point, and this action followed. The evidence also shows that the Vashon Investment Company was organized by the appellant and respondent. The appellant was at all times the active head thereof. The stock was all held by them about equally, with the exception of a few shares held by third parties. The appellant had the whole management and control of the business of the corporation, which consisted of a twenty-five-year lease of the lot mentioned in the contract above set out, upon which lot the company had erected a three-story block which it leased at a monthly rental to tenants. Respondent knew nothing of the business of the company, but relied wholly upon the appellant.

Prior to the time the contract was entered into, the respondent had offered to sell all of his stock in the company at $30,000. The appellant had been negotiating a sale of the property of the corporation at $100,000, which would make the value of respondent's stock about $50,000. Appellant was also negotiating for other tenants of the building, for a long time at a larger rental than the corporation had theretofore been receiving. Respondent did not know, and was not informed, of the contemplated advance in the rental value. The appellant, learning that respondent had offered his stock at $30,000, called upon him and told him in substance that this offer of one-half of the stock of the corporation at that price would injure the sale of the whole property; that he could sell respondent's stock at a much greater sum. The

appellant then wrote the contract above set out, and the same was signed by the parties.

It will be noticed that the contract provides that the respondent agrees "to sell to R. J. Huston or to whomsoever he may direct my entire stock . . . in the Vashon Investment Co . . . upon the payment to me of the sum of not less than $30,000, and as much more than said sum as said stock may be sold for to any person other than the said R. J. Huston." It seems plain that this contract was a contract of agency,. and that the price to the agent was indefinite and uncertain. If the appellant became the purchaser, the price was to be "not less than" $30,000. In other words, as between appellant and respondent, no definite price was fixed. It was subject to further negotiations. If the parties to the action had intended to fix the price as between themselves at $30,000, the words "not less than" were surplusage and misleading, and would no doubt have been omitted.

"In all contracts of sale, assignment, and the like, the price is, of course, a material term. It must either be fixed by the agreement itself, or means must be therein provided for ascertaining it with certainty. In the absence of such provision, either stating it or furnishing a mode for fixing it, the agreement would be plainly incomplete, and could not be enforced." Pomeroy, Contracts, § 148.

"In all cases of sale, it is evident that the price is an essential ingredient of the contract, and that when this is neither ascertained nor rendered ascertainable, the contract is void for incompleteness and incapable of enforcement." Fry, Specific Performance (2d ed.), § 335.

"It is settled that the court will not decree the specific performance of a contract which involves the payment of a price, until the price shall be ascertained. The ascertainment of the price must precede a decree." *Woodruff v. Woodruff*, 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380, 384.

"It is a well established rule that courts of equity will not undertake to enforce an agreement if any of its provisions are so far indefinite or ambiguous as to render it uncertain what were the intentions of the parties, and what obligations they intended to assume. A suit for specific performance can

only be maintained where the terms of the agreement are so precise that they cannot be reasonably misunderstood. If the contract which a complainant seeks to enforce is vague or uncertain, a court of equity will not interfere, but will leave him to his legal remedy. *Colson v. Thompson*, 2 Wheat. 336, 341. And, where a contract is clearly susceptible of different reasonable interpretations, a court of equity ought not to take the chances of decreeing its specific execution in a way which will possibly do violence to the intentions of the parties thereto." *Minnesota Tribune Co. v. Associated Press*, 83 Fed. 350, 357.

Furthermore, the appellant and respondent were not dealing at arm's length. The appellant was the confidential agent of the respondent in regard to this property. The appellant had the sole charge and management of it, and the respondent relied upon the appellant in all matters pertaining thereto. It was, therefore, the duty of the appellant to fully inform the respondent as to the condition of the property, and of negotiations then pending which might affect the value of the property. This was not done, and the respondent was led to enter into the contract without knowing that the rental value and the revenue of the property were about to be increased, and were increased, and a large amount of rental collected in advance before the appellant made his tender. In fact, it appears that the cash tender was made from funds which rightly belonged to the corporation.

We think the judgment was right, and it is therefore affirmed.

RUDKIN, C. J., CROW, and PARKER, JJ., concur.

DUNBAR, J., concurs on the ground last discussed.