JOHN A. DEVITO *vs.* BOEHME AND RAUCH COMPANY.

Suffolk.    March 29, 1921. — June 30. 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Contract,* What constitutes. *Practice, Civil,* Issues to the jury, Report, Verdict.

In an action for a breach of an alleged contract to accept and pay for certain paper stock, there was evidence that on an October 19 the defendant wrote a letter to the plaintiff, in reply to an offer to sell certain paper at $31 a ton, stating, " We would not pay over $28 per ton . . . less 3% for three to five hundred pounds of Mixed Papers of the same quality as we have had from you heretofore," and that on October 22 the plaintiff wrote to the defendant " We accept your offer of $28 per ton Del., 3% 30 days, 500 tons of Mixed Papers and Box Cuttings, quality to be the same as heretofore." The question of whether the parties by these letters made a binding contract was left to the jury, who, by answers to special questions, found that one was not made. *Held,* that

(1) The question of whether a contract was so made was one of law for the court;

(2) The statement in the defendant's letter of October 19 that he would not pay over $28 per ton was not an offer to purchase at that price;

(3) The plaintiff's attempted acceptance was of no avail;

(4) The judge should have instructed the jury that the letters of October 19 and 22 did not constitute a contract.

In the above described action, it appeared that, in certain correspondence subsequent to October 22, the defendant continuously denied that his letter of October 19 contained an offer or that any contract had been made, and changed invoices of goods shipped by the plaintiff at $28 per ton to read $25 a ton, the price fixed by a previous still unfilled contract of the plaintiff. *Held,* that neither the cor-

respondence after October 22 nor the change of the invoices by the defendant could be found to have created a contract.

If a judge erroneously leaves to a jury a question of law and the jury answer the question correctly no harm results, and, whether the question of the judge's error is raised by exceptions, or by a report, the verdict will not be disturbed.

CONTRACT, with a declaration in two counts, the first count being to recover $2,300 for goods sold and delivered and the second count being to recover $5,000 for the breach of an alleged contract in writing to accept and pay for certain mixed paper. Writ dated March 24, 1919.

In the Superior Court the action was tried before *Fessenden, J.* The material evidence is described in the opinion. At the close of the evidence the judge presented two issues to the jury which with the answers thereto are stated in the opinion. The judge then ordered a verdict for the plaintiff under the first count of the declaration and a verdict for the defendant under the second count and at the request of the parties reported the case for determination by this court upon the stipulation and agreement of the parties that if he erred in ordering a verdict for the defendant under the second count of the declaration, then final judgment was to be rendered for the plaintiff in the sum of $7,300; if he did not err in so ordering the verdict, then final judgment was to be rendered for the plaintiff in the sum of $2,300.

The case was submitted on briefs.

*M. Witte & R. R. Sullivan,* for the plaintiff.

*F. P. Garland & H. Tirrell,* for the defendant.

JENNEY, J. This is an action of contract in which the declaration contains two counts. On the first count the plaintiff seeks to recover $2,300 for goods sold and delivered; and on the second, damages for the breach of a contract for the sale of paper stock. There is no question as to the subject matter of the first count; " the only controversy . . . is whether or not there was a contract entered into . . . concerning the subject matter of count two." The entire dealings were conducted by correspondence.

The report recites that " Two issues were presented to the jury under count two of the substitute declaration on the agreement of plaintiff's counsel that there were no other questions of fact.

" 1. Did the parties make a binding contract by the letters of October 19 and October 22, 1918?

" 2. Did the parties make a contract after October 19, 1918, for the sale of 500 ton [s] of paper at $28 per ton?

" The jury answered both questions in the negative. The court then ordered a verdict for the plaintiff under count one of the substitute declaration in the sum of $2,300 and, the jury having answered the foregoing questions in the negative, the court thereupon ordered a verdict for the defendant under count two of the substitute declaration."

The correspondence, in part by telegram and in part by letter, so far as material was as follows:

October 15, 1918 (plaintiff to defendant by telegram):

" Offer you subject to prior sale one thousand tons mixed papers and box cutting or any part thereof for shipment from now to the end of the year at $35 per ton delivered."

October 16, 1918 (defendant to plaintiff by letter):

" We could not pay you over $28 per ton delivered Monroe for mixed papers today and as you asked $35 in your telegram we did not think it would be of any use for us to wire you our offer."

October 18, 1918 (plaintiff to defendant by telegram):

" Replying your Oct sixteen offer you three hundred to five hundred tons mixed papers $31 ton deliver for acceptance return wire."

October 19, 1918 (defendant to plaintiff by letter):

" In reply to your telegram of the 18th, will say that we would not pay over $28 per ton delivered Monroe, less 3%, for three to five hundred pounds of Mixed Papers of the same quality as we have had from you hreetofore."

The signature of this letter was as follows: " The Boehme & Rauch Co. (Signed) H. L. Rauch."

October 22, 1918 (plaintiff to defendant by letter):

" We are in receipt of yours of Oct. 19th, and beg to advise that we accept your offer of $28 per ton Del., 3% 30 days, 500 tons of Mixed Papers and Box Cuttings, quality to be the same as heretofore."

The other letters and telegrams except as hereinafter given need not be considered; they neither add to nor detract from those quoted.

Shipments of mixed paper stock under the contract on which count one is based, and upon a contract claimed to have been

created by the letters and telegrams set forth, began simultaneously. At each shipment the plaintiff mailed to the defendant invoices designating the order on which the car in question applied, and giving identifying particulars. It was admitted that all the plaintiff's invoices "except those relating to . . . four . . . shipments, indicated that they were to apply to the so-called October contract calling for $28 per bale [?] and that they were received by the defendant before November 4, 1918, in the usual course of the mails. The cars themselves, however, did not actually arrive at destination until November, the earliest date being November 4.

"Upon the receipt of the invoices and before the arrival of the goods, the defendant changed the invoices on the alleged October order, which [invoices] read for $28 per ton, to $25 per ton, and on November 12 and 19 and December 3, 1918, mailed to the plaintiff checks to cover the invoices as changed by the defendant, claiming that these shipments were due it under a contract of September, 1918.

"These checks the plaintiff refused to accept because of the changing of the invoices from $28 to $25 per ton, and returned them to the defendant."

October 28, 1918 (defendant to plaintiff by letter):

"We will have to ask that until further notice you make no more shipments of Mixed Papers from your territory. It is doubtful with us whether Mr. Rauch intended to give you an order inasmuch as we are greatly overstocked, and facing an embargo we will have to make this request. He will be home some time this week and you will hear from him."

October 31, 1918 (defendant to plaintiff by letter):

"I find that during my absence you started to ship paper stock to us assuming that our letter of October 19, 1918 was an order. Now I merely was giving you at that time our ideas of what we thought the price should be. Since I have been gone I find that the market has slumped and all our shippers have shipped about twice as much as they ordinarily shipped with the result that we have considerable more stock here than we can handle, so we cannot give you an order for the stock at the present moment at any price.

"Please do not ship us any stock without receiving a formal

order for the same. A letter merely giving you our ideas of the price is not an order."

November 4, 1918, (defendant to plaintiff by telegram):

" Your letter second received You have an order from us for thirteen cars mixed at $25 Monroe less three per cent Shipments at $28 are being changed to twenty five to apply on above order When more than thirteen cars are shipped we will refuse balance."

On the latter date the defendant also wrote the plaintiff, denying the existence of any contract other than that relating to the merchandise which is the subject of the first count, and stating that it should apply all shipments upon the contract on which that count is based; and on November 18, 1918, the defendant notified the plaintiff that sufficient shipments had arrived to complete the order referred to in that count and that further shipments would be refused. Such shipments were tendered, but the defendant declined to accept them on the ground that it had given one order only.

The plaintiff argues that the letter of October 19, 1918, in which the defendant said that it " would not pay over $28 per ton " for mixed paper stock of a quality specified, was in effect, in the light of previous correspondence, an offer to purchase, which upon its acceptance by the plaintiff constituted a contract. The question of whether a contract was so made was one of law for the court, as there was no ambiguity and as nothing appears in the letters permitting a factual inference. Even if the letter of October 19, 1918, may be construed as referring to tons, and not pounds according to its literal terms, and even if the plaintiff had a right to consider it as relating to a definite weight of paper, the statement that the plaintiff would not pay over $28 per ton was not an offer to purchase at that price. It represented a step in a negotiation rather than an offer, an invitation rather than a proposal. Its negative statement was not the equivalent of an affirmative proposition. The plaintiff's attempted acceptance was of no avail; and the judge should have instructed the jury that the letters of October 19 and 22, 1918, did not constitute a contract. *Smith* v. *Gowdy*, 8 Allen, 566. *Tanning Co.* v. *Telegraph Co.* 143 N. C. 376. *Sellers* v. *Warren*, 116 Maine, 350. *Nebraska Seed Co.* v. *Harsh*, 98 Neb. 89. The correspondence after October 22, 1918, did not create a contract; it clearly indicated a refusal to be bound.

It contained no offer, acceptance of offer, or words of ratification. Changing the invoices to conform to the contract which was the subject of the first count and rendering them inapplicable to that declared upon in the second count neither created the contract declared upon therein, nor was it evidence of such a contract. The liability, if any, ·arising because thereof was not within the terms of the contract set forth in that count. The second issue should not have been submitted to the jury.

The error, however, did not injure the plaintiff. After the answers of the jury a verdict for the defendant was directed on the second count. Although the question of whether a contract had been made was one of law determinable by the judge, the jury decided it correctly. *Rogers* v. *Abbot,* 206 Mass. 270. St. 1913, c. 716, § 1. G. L. c. 231, § 132. It is immaterial whether the question is presented by report or exceptions.

In accordance with the terms of the report judgment is to be entered for the plaintiff for $2,300.

*So ordered.*