ANNA LA GRANGE BLAKESLEE, Appellant, Respondent, *v.* FLORENCE T. NELSON, as Executrix, etc., of ROBERT M. NELSON, Deceased, Respondent, Appellant.

Third Department, January 16, 1925.

**Vendor and purchaser — offer and acceptance — statement in letter by owner to real estate agent " I will not sell for less than $56,000," and telegram by agent " Will accept your offer $56,000 net," not offer and acceptance.**

An offer to sell real estate and the acceptance thereof by a real estate agent on behalf of an undisclosed principal is not evidenced by a statement in a letter by the owner to the agent " I will not sell for less than $56,000 " and a telegram from the agent to the owner " Will accept your offer $56,000 net," especially where it appears that throughout the transaction culminating in the letter containing the quoted statement and in the telegram quoted, the agent was endeavoring to purchase the property for the principal and had suggested several different prices for the owner's consideration.

Furthermore, if the alleged offer and acceptance were complete, it did not cover the dower interest of the wife of the owner, in view of the correspondence and negotiations preceding the alleged offer and acceptance.

APPEAL by the plaintiff, Anna La Grange Blakeslee, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of Albany on the 18th day of March, 1924, upon the decision of the court, rendered after a trial at the Albany Special Term, and also from an order entered in said clerk's office on the 14th day of March, 1924, denying plaintiff's motion to amend the complaint.

Appeal by the defendant, Florence T. Nelson, from so much of such judgment as holds that the writings in evidence in the action constituted an offer by the testator to sell the property in question to an undisclosed principal, and the acceptance by the plaintiff of such offer, which together constitute an offer to sell and acceptance thereof, and in so far as said judgment directs that the case be restored to the general calendar for trial as an action at law upon the question of damages.

*Woollard & Cogan* [*Louis J. Rezzemini* of counsel], for the plaintiff.

*A. Page Smith,* for the defendant.

H. T. KELLOGG, J.:

The plaintiff's case, to establish a contract for the sale to her of certain real estate, hinges upon the phrase, " I will not sell for less than $56,000," embodied in a letter, dated January 14, 1912, from Robert M. Nelson, the owner of the premises, to John P. Failing, the alleged agent of the plaintiff. The plaintiff contends

that the phrase constituted an unqualified offer by Robert M. Nelson to sell the premises for $56,000, and that the offer was accepted by John P. Failing when on January 15, 1912, he wired Nelson, " Will accept your offer $56,000 net." Failing, in the precedent negotiations, had insisted upon a conveyance not only of the interest of Robert M. Nelson but of the dower interest of his wife as well. Failing's telegram must be interpreted accordingly. It was not an acceptance of the offer made by Nelson, if offer it was, unless that offer comprehended the interests of both the Nelsons. The plaintiff is even now claiming that such was the nature of the alleged offer. If such was not its nature, then the plaintiff herself must agree that there was no meeting of the minds and no entry into a contract relation. We do not think, however, that the phrase can be regarded as an offer either of the interest of Nelson or of that of his wife. On its face it expresses the price at which Nelson would not sell rather than the price at which he would sell. Moreover, it expresses no offer to sell the interest of his wife. It was " I " who " will not sell " rather than " I and my wife " who " will sell." The unambiguous words of the phrase, considered apart from all other correspondence between the parties, compel the conclusion arrived at. They were words of negation, and, although they may have invited an offer, they clearly made none. The conclusion is strengthened, rather than weakened, by the other letters written. On December 9, 1911, Failing asked Nelson if he " would consider selling " the property. On December eleventh Nelson writes that if Failing will make an offer he " will consider the bid." On December twenty-second Failing names a sum and asks Nelson if he will " consider this offer." On December twenty-fifth Nelson writes that he " cannot consider your offer." On December twenty-ninth Failing, writing about a prospective buyer, says: " If I could get him up to $50,000, would you consider it? " It thus appears, as it appears from other letters, that Failing, throughout the negotiations, was importuning Nelson to sell; that all the offers were made by Failing; that Nelson never solicited a sale; that it was Nelson's part to " consider " offers made by Failing rather than Failing's part to " consider " offers made by Nelson. On January 1, 1912, Nelson, replying to Failing's letter of December twenty-ninth, says: " I might consider $50,000 net, provided the purchaser paid all the expenses connected with the sale. I am not sure if my wife would sign off." Failing, noting the doubt thus expressed by Nelson, thereafter consistently makes his offers dependent upon a conveyance by both the Nelsons. Thus on January third he makes an offer providing that " you and your wife will sign " an agreement inclosed. On January fourth

Nelson writes in reply saying that " Mrs. Nelson will not sign the inclosed papers. * * * I doubt very much if Mrs. N. will sign off her interest in the property." On January eighth Failing writes asking Nelson, " Will you and your wife accept $49,000? " It was then that Nelson in his letter of January fourteenth employed the phrase, " I will not sell for less than $56,000." It thus appears that Nelson was at all times without authority from his wife to sell; that he had so informed Failing; that Failing was fully aware of Nelson's inability to make a promise for his wife; that he in consequence at all times insisted that Mrs. Nelson should herself sign an agreement to sell. Under these circumstances we would do violence to the simple words employed if we interpreted the phrase, " I will not sell for less than $56,000," to mean, " I and my wife will sell for $56,000." The tentative and indefinite character of Nelson's suggestion, embodied in the phrase, finds immediate explanation. Nelson " will not sell " because his wife " will not sell," and he has no power to represent her. He impliedly invites Failing to make an offer of $56,000 in order that he may lay the offer before his wife, and, if the offer be acceptable to her, both Nelson and his wife may sign. No such offer was made by Failing. We hold that no offer was made; that no offer was accepted; that no contract was entered into.

The judgment should be reversed and the complaint dismissed.

All concur.

Judgment reversed on the law, and complaint dismissed, with costs.