CARL L. STEWART *vs.* HERBERT S. JOHNSON.

Suffolk.    March 9, 10, 1925. — May 20, 1925.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Contract*, Consideration, What constitutes, Performance and breach.

At the trial of an action for damages resulting from a failure of the defendant to perform an alleged contract to repurchase for the plaintiff certain shares of corporate stock when its market price should reach a certain level, the plaintiff alleged and introduced evidence tending to show that the defendant, in return for a promise by the plaintiff to compensate him therefor, agreed to "protect" the plaintiff's account at the plaintiff's brokers, that the defendant broke the contract and that the broker sold the plaintiff's stock; that the contract relied on in the action was that the plaintiff would repurchase a part of the stock so sold, and that the consideration for this contract was "the same" as that for the contract to "protect" the account. *Held*, that the consideration for the contract to "protect," which had been broken, was not sufficient to support the contract to repurchase, but that a new offer and a new acceptance were necessary.

To prove the existence of the contract to repurchase above described, the plaintiff relied on various statements which, it was *held*, were too vague and uncertain to be construed as promises which would support the action.

CONTRACT, with a declaration as amended in four counts, for damages resulting from a failure by the defendant to perform an alleged contract to repurchase for the plaintiff "when the market price . . . should reach what he, the defendant, deemed to be the proper level at which the same should be repurchased," one thousand shares of the capital stock of the United States Smelting, Refining and Mining Company, which had been sold by the plaintiff's brokers to protect his margin account with them although the defendant had

contracted with the plaintiff to "protect" the account. In the various counts of the declaration, the plaintiff alleged that the defendant agreed that such "proper level" of the market price of the stock should be "$20 per share" or "$20 per share, or thereabouts." Writ dated December 5, 1919.

In response to a motion for particulars, the plaintiff specified that "the good and valuable consideration for which" the plaintiff alleged the defendant "agreed to repurchase" the shares as alleged in the declaration, was the same consideration as was the basis of his contract to "protect" the plaintiff's account with his broker.

In the Superior Court, the action was tried before *Greenhalge*, J. At the close of the plaintiff's evidence, a verdict was ordered for the defendant. The plaintiff alleged exceptions.

*R. B. Owen & E. R. Anderson*, for the plaintiff.

*J. E. Hannigan*, for the defendant.

SANDERSON, J. In this action the plaintiff is seeking damages for a breach of contract, depending for his proof upon certain letters and telegrams. Evidence was introduced to show that in the month of February, 1910, the plaintiff was carrying on margin with a brokerage firm one thousand shares of the common stock of the United States Smelting, Refining and Mining Company, hereinafter called the Smelting Company, and ten shares of United Shoe Machinery Corporation stock; that about February 4, 1910, upon receipt of a demand from the brokers for payment of $10,000, he telegraphed the defendant asking him to call on them and do what he could to protect the plaintiff's interests, offering to compensate him in any reasonable amount for services rendered or money expended, if any, in connection therewith. The defendant sent a telegram to the plaintiff dated February 9, 1910: "Brokers kept smelting shoe and pillsbury I will protect account." It is the contention of the plaintiff that these two telegrams constitute the original contract and that thereby the defendant became bound to deposit money or securities with the brokers when required to protect the account. The above mentioned stock was

carried in the plaintiff's account until the summer of 1910, when it was sold because the additional security required was not furnished, and the account was closed by the brokers transmitting to the plaintiff the proceeds of the sale of the stock. The plaintiff, however, is not asking damages because of the defendant's failure to advance money or securities to prevent the sale of the stock; but contends that at the time it was sold the parties modified their original contract by an agreement that the defendant would repurchase one thousand shares of Smelting Company stock when it reached the price of $20 a share in the Boston market. The plaintiff relies for proof of this modification upon telegrams and letters which are embodied in the record. No useful purpose would be served by a summary of their contents.

If it be assumed that the defendant was under obligation to buy for the account of the plaintiff stock of the Smelting Company at $20 a share or lower, there has been no breach proved because it did not at any time sell below $20 per share. On February 25, 1915, it was quoted at "20 – 20½" and on no other date was there a lower quotation. It does not appear how much was sold on that date, or what opportunity, if any, a person would have had to buy at those prices. Shortly before the stock reached this lowest quotation, the defendant advised the plaintiff that it would be unwise to buy it, and the plaintiff then could have executed his own orders directly with the broker, or by sending money to the defendant for the purchase of any amount of stock desired which could be procured at or near the price of $20 per share. Even when a binding agreement by a broker with a customer to carry stocks on margin is broken by a sale of the stocks, the customer is entitled to nominal damages only in the event of his being able to purchase the shares at approximately the price for which the broker sold them. *Hall* v. *Paine,* 224 Mass. 62.

Furthermore, if it be assumed that in February, 1910, there was a contract by which the defendant was to protect the plaintiff's account, liability under it, unless it had been modified, was fixed when all stock in that account was sold. After a breach it would require a new offer and a new accept-

ance to make a contract. The plaintiff testified that the only offer of compensation which he made was that which preceded the telegram from the defendant dated February 9, 1910, containing the statement "I will protect account." *Cummings* v. *Arnold*, 3 Met. 486, 494. *Thomas* v. *Barnes*, 156 Mass. 581. *Rowe* v. *Peabody*, 207 Mass. 226. If the statements, "It is my expectation to take advantage of the panic prices in copper," "when the proper time comes, will buy for you," "There may be an opportunity one of these days to buy it in," and "Mr. Dibble believes that the stock will eventually go to 20 or lower. I am waiting for that time," which may be found, respectively, in the defendant's letters dated July 14, August 1, October 8, and December 13, could be construed as promises, they are not undertakings to buy any definite number of shares of stock or to use the defendant's money in buying stock, and they are in other respects vague and uncertain. All the letters and telegrams which preceded the letter of the plaintiff in December, 1915, in which he asked the defendant to fulfil his promise to buy for him one thousand shares of Smelting Company stock, are consistent with the theory that the defendant was taking a friendly interest in the plaintiff's desire to make money by speculating in stocks, and with the intention on his part, if in his judgment it seemed best, of executing orders on the plaintiff's account and with the plaintiff's money for the purchase on margin of any stock which he thought would advance in price. The promises relied on are not sufficiently distinct and unequivocal to support an action, *Elwell* v. *Cumner*, 136 Mass. 102, and upon all the evidence the plaintiff has not maintained the burden of proving the contract set out in any count of the declaration. *Kehlor Flour Mills Co.* v. *Linden*, 230 Mass. 119, 122. *DeVito* v. *Boehme & Rauch Co.* 239 Mass. 290.

The order directing a verdict for the defendant was right. If the two telegrams and letters offered by the plaintiff and excluded had been in evidence the result reached would be the same.

*Exceptions overruled.*