HOWLAND DAVIS & others *vs.* HAFIZA AMEER.

HAFIZA AMEER *vs.* HOWLAND DAVIS & others.

Suffolk.    May 22, 1935. — June 26, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Stockbroker.    Contract,* Performance and breach, With stockbroker.

A stockbroker holding securities as collateral to a margin account, being ordered by his customer to transfer the account to another broker, is entitled to payment by the latter of the customer's indebtedness on the account simultaneously with delivery of the securities, and to have time, reasonable according to the circumstances, for getting the securities ready for delivery; and where, before a reasonable time elapsed, the other broker made no demand for immediate delivery nor tender of payment but ultimately refused to take over the account, the first broker incurred no liability to the customer by reason of his failure to transfer the account and by subsequently selling the securities after refusal by the customer to deposit additional margin.

TWO ACTIONS OF CONTRACT.    Writ in the first action in the Municipal Court of the City of Boston dated January 3, 1930, and that in the second action dated February 5, 1930.

Upon removal of the first action to the Superior Court, the actions were tried together before *Goldberg,* J., who ordered a verdict for the plaintiffs in the first action in the sum of $8,856.93, and a verdict for the defendants in the second action.    Ameer alleged exceptions.

*W. R. Bigelow,* for Ameer.

*L. Curtis, 2d,* for Davis and others.

PIERCE, J.    These are cross actions of contract growing out of transactions between Howland Davis and others, stockbrokers, doing business under the name of Blake Brothers and Company, and Hafiza Ameer, a margin customer.   Blake Brothers and Company are suing for a debit balance owing by the customer after her account was sold out in November, 1929.   The answer is a general denial and payment.   The plaintiff Ameer alleges in the first count of her declaration that the defendants failed in their agreement to carry her stock and to keep her informed of market conditions, and that they sold out her stock; and in counts 2, 3 and 4 she alleges, in substance, that the defendants failed in an agreement to transfer her account to another broker.   The answer is a general denial.   The cases were tried together to a jury, and all the evidence appears in the record.   In each case both parties filed motions in writing that upon all the evidence verdicts be directed in their favor respectively.   The motions were denied as to the customer and allowed as to the brokers.   Exceptions were duly saved by the customer.   The jury, thereupon, by order of the judge found a verdict in the sum of $8,856.93 for the plaintiffs in the case of Davis v. Ameer, and for the defendants in the case of Ameer v. Davis.

The evidence warranted the finding by the jury of the following facts: The plaintiff Ameer had a margin account with Blake Brothers and Company from 1922 to 1928, when it was transferred to Clark, Childs and Company.   In March, 1929, it was transferred back to Blake Brothers and Company, they paying Clark, Childs and Company $93,276.29 and receiving certain named securities.   The account was an inactive one, seven purchases and sales being made up to June 19, 1929, and none thereafter until the account was sold out in November, 1929.   On September 20, 1929, Blake Brothers and Company wrote Dr. Ameer asking her to "make some arrangement before October 1st to take this account up."   On October 1, 1929, Dr. Ameer, through her husband, made an arrangement with E. M. Hamlin and Company to take over the account, and on that day she signed two printed forms of E. M. Hamlin and Company.

One of the forms signed by Dr. Ameer was received by Blake Brothers and Company on October 2, 1929, and reads, omitting the list of securities, which is the same list set out in counts 3 and 4 of the declaration in the case of Ameer *v.* Davis. "Dear Sirs: Please deliver to Messrs. E. M. Hamlin & Co. the following securities, namely, . . . and receive from them the debit balance due, on my account with you." The other form headed "AUTHORIZATION TO TAKE OVER SECURITIES FROM ANOTHER PARTY" was signed by Dr. Ameer, was addressed to and received by E. M. Hamlin and Company on October 2, 1929, and reads: "Dear Sirs: Please accept from Blake Bros. & Co. the following securities, namely . . . [the list set out in counts 3 and 4 in the case of Ameer *v.* Davis] and on receipt of same pay to him (them) the sum of $81,500.00 and enter the transactions on my account with you." Upon receiving this direction and authorization Blake Brothers and Company proceeded to get the securities together for the purpose of transferring the account to E. M. Hamlin and Company. Many of them had been received by Blake Brothers and Company upon the opening of the account in their New York office, and had to be brought over from New York. Others had been pledged to banks, and other collateral had to be substituted for them. Owing to the huge volume of transactions at that time, it was difficult to make exchange of collateral; these difficulties were just the physical difficulties under which all brokers did business at this time, and it was an impossibility to have certificates split up quickly where necessary.

On October 14 or 15, 1929, E. M. Hamlin and Company for the first time got in touch with Blake Brothers and Company regarding the transfer of the Ameer account, and then notified Blake Brothers and Company that they were ready to take over the account if the securities were ready. On October 19, 1929, Blake Brothers and Company called the office of E. M. Hamlin and Company and said that they had most of the securities together and asked if they would take a firm receipt for the balance as was the custom between brokers; they received a reply: "Get your securities

together and then tender delivery." On October 19, 1929, Blake Brothers and Company had securities ready for delivery to about $85,000 in value, and securities not ready to $13,075, the total value being about $98,700. On September 27, 1929, Blake Brothers and Company called for $11,000 additional margin. This was not paid by Dr. Ameer.

On October 23, 1929, there was a crash in the stock market. E. M. Hamlin and Company refused to take part of the securities with a firm receipt for the balance, and in the latter part of October, after the panic, notified Blake Brothers and Company that on account of the drop in the market they would not take over the account. Blake Brothers and Company were finally ready to deliver the securities sometime between October 22 and 29, 1929, a time after E. M. Hamlin and Company had definitely refused to take them. On November 5, 1929, Dr. Ameer, in response to a letter or telephone call, saw a member of the firm of Blake Brothers and Company and was told that her account could not be transferred and that they would need $25,000 and unless more margin was furnished the account would have to be sold out. Dr. Ameer said to the firm member that she did not consider him her agent because Blake Brothers and Company were supposed to transfer the account; "I said that I didn't have it to give them, and if I had it, I wouldn't because they were not my agents, my brokers." About December 1, 1929, Dr. Ameer received a statement from Blake Brothers and Company which showed that all her securities had been sold and that there remained a debit balance of $6,824.72.

Upon the foregoing facts Dr. Ameer contends that she is entitled to verdicts as a matter of law. On October 16, when E. M. Hamlin and Company notified Blake Brothers and Company that they would take over the account, she had an equity in her account of something over $22,670, and she bases her claim on the theory that after the notice to her by Blake Brothers and Company to take up her account by October 1, 1929, they "should have been in readiness to transfer her securities immediately," citing *Hornblower v. Abbot*, 252 Mass. 291, 298; that as a matter of law a reason-

able time for performance had fully elapsed on October 16, 1929, *Lincoln* v. *Croll*, 248 Mass. 232, 233, particularly as Blake Brothers and Company did not notify her or E. M. Hamlin and Company that they were entirely ready to make the transfer. A sufficient answer is found in the undisputed facts that the account was inactive, no transactions had been made on it since June, 1929, and it was really a loan; that Blake Brothers and Company had advanced $93,276.29 of which $81,500 was then owing; that it was insufficiently secured; that on September 27, 1929, Blake Brothers and Company had demanded more margin, which was not paid; that owing to the stock market conditions it was difficult to get the securities together; that there was no testimony that the delay was unreasonable in view of the conditions then existing; that the panic came while the transfer was pending; and that thereafter E. M. Hamlin and Company refused to take the transfer because of the state of the market.

It is plain, as matter of law and of fact, that Dr. Ameer and Blake Brothers and Company contemplated that delivery of the securities to E. M. Hamlin and Company and the payment of $81,500 to Blake Brothers and Company should be simultaneous acts and neither would be in default in the absence of readiness and willingness to perform by the other. Here there is no evidence, beyond a declaration that E. M. Hamlin and Company were ready to receive, to show that they were at any definite time ready and able to pay to Blake Brothers and Company $81,500 which was to be paid with the delivery of the securities. The duty of Blake Brothers and Company was to deliver the securities upon demand with tender of the amount to be paid, not, as Dr. Ameer contends, to have the securities ready for immediate delivery at any time after October 1, 1929, regardless of the payment or tender of the debt which the stocks secured. *Lewis* v. *Mott*, 36 N. Y. 395. Here E. M. Hamlin and Company by their notification that they were ready to receive the securities made no demand for an immediate transfer, and made no suggestion that they were prepared to make an immediate payment. The obli-

gations to transfer the stock and to make the payment were to be performed within a reasonable time after October 16, 1929.

The brokers contend that on the undisputed facts Dr. Ameer suffered no substantial damage, even though they were not at all times after October 1 ready to deliver the securities, for the reason that had there been no delay the only difference would have been that she would have had an account in the hands of broker B instead of in the hands of broker A; that all she can properly claim as the measure of her damages for the delay is a right to sell at a profit; that she did not lose that because she could at any time have made sales while the account remained with Blake Brothers and Company pending the transfer; that the equity in the account would have been wiped out by the market crash in whosever hands it was, unless she had ordered sales, and this she could have done as it was. The case is governed by *Hall* v. *Paine,* 224 Mass. 62, 65, and *Stewart* v. *Johnson,* 252 Mass. 287, 289. See Williston on Contracts, §§ 1345, 1353.

·                              *Exceptions overruled.*