HONOLULU RAPID TRANSIT COMPANY, LIMITED, A HAWAII CORPORATION *v.* ERNEST G. PASCHOAL.

No. 4713.

DECEMBER 12, 1968.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE LAURETA ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY ABE, J.

This case raises the issue whether appellee, Ernest G. Paschoal, had agreed to sell to appellant, Honolulu Rapid Transit Company, Ltd., all of the shares of stock of Paschoal's, Ltd.

On Saturday, January 14, 1967, appellee and appellant's corporation president, Weinberg, had entered negotiation for the sale of Paschoal's, Ltd. Paschoal had quoted a price of $100,000, and Weinberg had countered with the figure of $75,000.

In the Saturday negotiation the parties had agreed to certain terms and covenants but not to other terms and covenants. Paschoal at the negotiation also informed Weinberg that his wife and his son each owned one-third of the stock of the company.

As they parted on Saturday, Paschoal told Weinberg that he did not think $75,000 was sufficient but that he would talk it over with his wife.

On Sunday Paschoal informed Weinberg that the deal was over because Mrs. Paschoal had decided not to sell.

On Monday, the next day, Paschoal wrote the following letter to Weinberg:

"January 16, 1967

\* \* \* \*

Dear Mr. Weinberg:

Thank you for your time and patience for coming to Maui to discuss the sale of my company. After discussing the proposal that you proposed with my wife, we decided that we would not settle for less than $100,000 for the whole corporation, excluding the Aloha and Hawaiian Air Lines stocks, which we plan to keep.

Since Palms Travel office is included in the deal, a fully appointed travel office with all airline, steamship, railroad, hotels etc, a going business, we decided on the $100,000.

Payment over a ten year period, and my salary of $1,500.00 monthly, security for ten years.

Further on the travel office, the reason I feel it is worth as much as I do, is that I recently sold one of my smaller travel offices in Kahului, not doing the business as my present one, for $5,000.00.

Thank you again Mr. Weinberg, and if you feel that we can come to some agreement, please call me at 323-162, office or 35140, home. Would appreciate hearing from you. Sorry I could not see or call you yesterday and had hoped that Mr. Irving Maeda had explained all this to you.

Yours truly,
/s/ Ernest G. Paschoal
Ernest G. Paschoal

EGP :wp

P.S. As I mentioned to you, there is another interested party who will be out in early February, but am giving you first opportunity."

On Tuesday, January 17, Weinberg telephoned Paschoal and appellant contends that Weinberg "concluded an agreement with Paschoal for the sale of Paschoal's, Ltd., on the terms Weinberg had proposed in Wailuku (with the exception of the Maui Palms Travel Office), but for $100,000 as the purchase price."

During the telephone conversation Paschoal suggested to Weinberg that he call his attorney and also contact Paschoal's attorney so that both parties and their attorneys could get together the following day in Honolulu.

Paschoal did not attend the meeting but sent his accountant Maeda to inform Weinberg that Paschoal had gone to the mainland to talk to his son about the sale.

On January 19, the day after the proposed meeting, appellant's attorney wrote to Paschoal that appellant had unconditionally accepted his offer of January 16. On the following Thursday, January 26, Paschoal's attorney wrote to Weinberg's attorney, denying the existence of a contract.

On or about March 1, 1967, Paschoal agreed to sell all of the shares of stock of Paschoal's Ltd., to American Transit Company for a consideration considerably in excess of $100,000.

On June 14, 1967, appellant brought this action for

specific performance of the alleged contract or for dam-·ages for the breach thereof, and the trial court ex parte issued a restraining order restraining appellee from acting to impair appellant's rights.

Several hearings were had and testimonies were taken, and the restraining order was continued on a periodic basis. Final hearing before the trial court was on a motion for summary judgment. However at the suggestion of the attorney for the appellant, the hearing was considered to be on a motion to dismiss. Subsequent to the hearing, the trial court entered a decision holding that there was no binding contract between the parties on several grounds.

The first ground was, as a matter of law, that Paschoal's letter of January 16, 1967 was "not an offer but is an invitation for an offer."

The second ground and its findings of fact were that "the terms of the contract sought to be proved are fatally uncertain and defective in three material terms: (1) the mechanics of obtaining Public Utilities Commission Approval for performance of the alleged contract; (2) the five terms including: employment contract bonus, the amount of down payment, the time for down payment, the amounts of the installments and the time for the payment of the installments; and (3) the terms for security of Plaintiff's performance. The failure of the parties to reach agreement in all of the above enumerated terms renders the contract incomplete, indefinite and unenforceable either in equity or at law."

The third ground was that "the contract sought to be proved deals with the sale of the type of security covered by the Statute of Frauds provision in the Uniform Commercial Code 8-319. The entire alleged contract, including the stock sale and employment provisions, by its terms could not be performed by either party within one (1)

year. Therefore, the Statute of Frauds covering contracts incapable of performance within one (1) year contained in Section 190(1)(e), Revised Laws of Hawaii 1955 is applicable."

The fourth ground was that appellant could not enforce the sale of the stock of the entire corporation because appellant had failed to show that Paschoal had authority to sell his wife's or son's shares of stock. Judgment was entered accordingly and appellant appealed from this judgment.

I.

Appellant's contention is that Paschoal's letter dated January 16, 1967, was an offer to sell and that it was accepted by Weinberg thereby forming a binding contract. We disagree with this contention.

The first paragraph of Paschoal's letter contains the following: "we decided that we would not settle for less than $100,000 for the whole corporation...." It was a statement by appellee that he would give consideration to an offer of not less than $100,000. We agree with the trial judge that as a matter of law the letter was nothing more than an invitation for an offer or an invitation to continue negotiation and not an offer to sell for the price of $100,000.

As indicated above, the trial court's finding that the parties had not agreed upon some of the essential terms and covenants tends to substantiate its finding that Paschoal's letter was not an offer.

This point is further substantiated by testimony of Weinberg to wit:

"Q Now Mr. Paschoal indicated to you that it would be necessary that he meet with his attorney and you and your attorney and that you would work out

all covenants and conditions which would be included in the contract?

"A    That is correct.

"Q    And these would include the things that you just discussed as well as others that would be discussed there by—

"A    Would have to be put down in the contract.

"Q    But you would come up with things which he would agree to and he would come up with things you would agree to?

"A    That is correct.

"Q    That was agreed to in the telephone conversation that you had, you would get together with him and his attorney Don Hamilton as I recall?

"A    That is correct.
*  *  *  *

"Q    And between you you would settle all these covenants and these conditions that would be incorporated in the final agreement, in this agreement?

"A    That is right.

In interpreting a similar statement in a telegram the Massachusetts Supreme Court in *De Vito* v. *Boehme & Rauch Co.*, 239 Mass. 290, 132 N.E. 35 (1921), said at page 37:

"The plaintiff argues that the letter of October 19, 1918, in which the defendant said it 'would not pay over $28.00 per ton' for mixed paper stock of a quality specified, was in effect, in the light of previous correspondence, an offer to purchase, which upon its acceptance by the plaintiff constituted a contract. The question of whether a contract was so made was one of law for the court, as there was no ambiguity and as nothing appears in the letters permitting a factual inference ... the statement that the plaintiff (sic) would not pay over $28 per ton was not an offer to purchase

at that price. It represented a step in a negotiation rather than an offer, an invitation rather than a proposal. Its negative statement was not the equivalent of an affirmative proposition. The plaintiff's attempted acceptance was of no avail; and the judge should have instructed the jury that the letters of October 19 and 22, 1918, did not constitute a contract."

Courts of other jurisdictions have also construed similar indefinite and negative statements. *Owen* v. *Tunison*, 131 Me. 42, 158 A. 926 (1932); *Blakeslee* v. *Nelson*, 212 App. Div. 219, 207 N.Y.S. 676, *aff'd*, 240 N.Y. 697, 148 N.E. 763 (1925); *Huston* v. *Harrington*, 58 Wash. 51, 107 P. 874 (1910).

We believe that the last paragraph of the letter which begins "Thank you again Mr. Weinberg, and if you feel that we can come to some agreement please call me..." and the postscript of the letter informing Mr. Weinberg that there is another person interested in the stock of Paschoal's, Ltd., indicate that Paschoal's letter was not an offer but an invitation for an offer or an invitation to continue negotiation for the purpose of reaching agreement.

## II.

Assuming arguendo that Paschoal's letter of January 16, 1967, was an offer, testimony of Weinberg is that he accepted the offer contained in the letter, however, subject to the terms and covenants which had been discussed by the parties in Wailuku on January 14, 1967. It is a well settled rule that a qualified acceptance constitutes a counter offer and a rejection of the original offer. *Todorovich* v. *Kinnickinnic Mut. Loan & Bldg. Asso.*, 238 Wis. 39, 298 N.W. 226 (1941). *Minneapolis, &c., R'y* v. *Columbus R'g Mill*, 119 U.S. 149 (1886).

Now Weinberg having made a counter offer, unless

Paschoal accepted this counter offer, there could be no binding contract. Weinberg's testimony is that there was an acceptance by Paschoal. On the other hand, Paschoal in his testimony has denied acceptance and stated that he had indicated to Weinberg that they should get together with their attorneys in Honolulu to work out a deal.

There is no finding by the trial court whether the counter offer had or had not been accepted by appellee. However, we find it unnecessary to decide this issue.

In its findings of fact the trial court stated that when Paschoal wrote on January 16, 1967, the parties had not agreed upon the mechanics of obtaining the public utilities commission's approval for the transfer of the shares of stock of Paschoal's, Ltd.; the amount of bonus to be paid Paschoal under the employment contract; the amount and time of down payment of the purchase price; the sum and time for installment payments; and the nature of security to be furnished by appellant to secure the payment of the full purchase price. Appellant has not specified these findings as error.

We agree with the trial court that mechanics for obtaining approval of the public utilities commission as to the transfer of shares of stock of Paschoal's, Ltd., and the consequence of the failure to get such an approval are essential parts of the agreement. We also agree that the bonus to be payable under the employment contract, amount and date of down payment of the purchase price, the sum and time of installment payments, and the nature of security to be furnished appellee to guarantee appellant's performance of the contract are also all essential and material terms, conditions or covenants of the contract.

Thus, the parties not having reached agreement upon all of the essential and material terms, conditions or covenants of the agreement, there was failure of mutual assent

or a meeting of the minds and therefore no binding contract. It is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. *Richardson* v. *Greensboro Warehouse & Storage Co.,* 223 N.C. 344, 26 S.E.2d 897 (1943) ; *Martin* v. *Ewing,* 112 W. Va. 332, 164 S.E. 859 (1932) ; *Louisiana* v. *Mayor of New Orleans,* 109 U.S. 285 (1883).

Now, having reached this conclusion, it is not necessary to decide whether the agreement fell within the provisions of either of the statutes of fraud.

Judgment affirmed.

*David R. Carroll (Robertson, Castle & Anthony* of counsel) for appellant.

*William R. Loomis, Jr. (Harold W. Conroy* on the brief, *Henshaw, Conroy & Hamilton* of counsel), for appellee.