JEANNIE GRAHAM *vs.* FRANCIS G. OMAN & others.

Plymouth. November 6, 1970. — December 11, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Contract,* What constitutes, Implied contract.

Findings by a master in a suit in equity by a broker against a purchaser of land, who told the plaintiff that if it could be rezoned and a shopping center erected thereon "an arrangement might be worked out whereby . . . the plaintiff would be the exclusive broker" for the center, required conclusions that the plaintiff expected to be paid for substantial services she rendered in securing the rezoning and in promoting the interests of the shopping center only "by deriving the benefits from

an exclusive brokerage contract," that the parties never reached an agreement as to such a contract, and that the defendant was not liable to the plaintiff for her services.

BILL IN EQUITY filed in the Superior Court on October 26, 1964.

The suit was heard by *Hale*, J., on a master's report.

*Maurice H. Kramer* for the defendant Oman.

*Alton F. Lyon* for the plaintiff.

QUIRICO, J. This is a bill in equity in which the plaintiff seeks to recover for services allegedly rendered by her to the defendants in the development of a shopping center. The case is before us on the appeals by the plaintiff and the defendant Francis G. Oman (Oman) from a final decree awarding the plaintiff damages in the sum of $2,400 plus interest and costs against Oman and dismissing the bill as against Oman Realty, Inc. (the corporation) and Oman Realty Associates Trust (the trust).

The case was heard by a master. The following is a summary of his pertinent findings. On November 7, 1959, Oman signed an agreement to purchase ninety-one (91) acres of land in Hanover, Massachusetts, from Ellis Rome and his wife for $80,000. The plaintiff was a licensed real estate broker, and she acted as such for the sellers in the transaction. The agreement provided that they would pay her a commission of $5,000 for her services. On May 4, 1960, the sellers conveyed the land to the corporation as Oman's nominee. At that time the sum of $5,000 was deducted from the purchase price and Oman agreed to pay the plaintiff her commission in that amount. He paid it sometime in 1961. On May 28, 1962, the corporation transferred the land to the trust.[1] At all times material to this case Oman held forty-nine (49) shares of the corporation and his two brothers held the remaining fifty-one (51) shares; and the same persons held the same number of shares of the trust.

---

[1] The master found that the corporation was dissolved on December 13, 1961; but see G. L. c. 155, § 51, continuing corporations for three years after dissolution for limited purposes including disposal and conveyance of property.

Oman had authority to act for the corporation and the trust in all matters here involved.

Before Oman signed the agreement to purchase the Rome land he and the plaintiff talked about having the land rezoned for a shopping center. Oman indicated to the plaintiff that if that could be done and a shopping center was erected, "an arrangement might be worked out whereby . . . the plaintiff would be the exclusive broker." No definite terms for any brokerage arrangement were made then or at any other time. From time to time the plaintiff asked Oman to agree on the terms of an exclusive brokerage agreement. She submitted a draft of such an agreement to him in early 1960 and another in August, 1960. The drafts were "indefinite" and no agreement was ever reached between the plaintiff and any of the defendants with respect to her being the exclusive agent or broker for the shopping center.

After Oman signed the agreement to purchase the Rome land the plaintiff made arrangements for him to engage a lawyer to seek a zoning reclassification of the land. The lawyer took action which resulted in a hearing before the town's planning board and later in a special town meeting to consider the matter. The plaintiff spoke for the reclassification at both meetings. She also spoke to some residents of the town and urged them to attend the special town meeting. Her efforts resulted in more people attending the meeting than would otherwise have done so. At the special town meeting held on February 1, 1960, it was voted to reclassify the land.

For the next two years the plaintiff spent a substantial portion of her time in the interests of the shopping center. She collected information necessary for the preparation of a brochure. Oman permitted her to use the corporation's office in Weymouth for the purpose of calling prospective tenants for the center. She called a great many prospects and interviewed some at their places of business and at the shopping center, but she was never able to obtain any binding leases because the premises were not ready. The work she did was a benefit to the defendants, and its fair

value was $4,000. She expected to be paid for it by deriving the benefits from an exclusive brokerage contract for the center. Oman knew that the plaintiff expected to receive such a brokerage contract and to be paid for the work she was doing for the center.

On March 23, 1962, the corporation entered into an exclusive brokerage agreement for the center with someone other than the plaintiff. When the plaintiff learned of this she stopped working for the center and demanded payment for work she had done to that time. She was paid nothing for her services. The master made no finding of reasons why the plaintiff and defendants never entered into an exclusive brokerage agreement.

The plaintiff acted as broker for Oman in the sale of a parcel of land on September 16, 1959, and of another parcel of land in January, 1961. Her brokerage fee on these two sales would have been $2,400. She received no fee on either sale, and does not now claim any such fees. The master makes no finding of the circumstances under which she rendered these services.[2]

The plaintiff contends that on the facts found by the master she is entitled to a final decree awarding her damages of $4,000 plus interest and costs against all three defendants, or at least against Oman and the trust. The defendant Oman contends that on those same facts he is entitled to a decree dismissing the bill. We agree with the defendant.

1. If the final decree awarding the plaintiff damages in the sum of $2,400 was intended to compensate her for her services as broker in Oman's two sales of land in September, 1959, and January, 1961, it cannot stand. The bill does not seek compensation for those services, the master found that the plaintiff is not seeking compensation for them,

---

[2] These facts found and reported by the master seem to have no relevance to the plaintiff's claim for services performed in connection with the defendants' shopping center. The two conveyances are not mentioned in the plaintiff's bill. They are mentioned in this opinion because of the coincidence that the final decree entered in the Superior Court awarded the plaintiff damages in the sum of $2,400 plus interest and costs.

and the master found no facts giving rise to any right of recovery by the plaintiff in connection with the two sales.

2. If the final decree was intended to compensate the plaintiff for the services which she rendered in connection with the proposed shopping center, it cannot stand. A reading of the master's report in its entirety requires the conclusion that the plaintiff expected to be paid for these services only "by deriving the benefits from an exclusive brokerage contract" upon which the parties never agreed. The defendants never agreed or contracted to make her their exclusive broker for the center. Oman told her that such "an arrangement might be worked out." This did not constitute an offer or enforceable promise. *DeVito* v. *Boehme & Rauch Co.* 239 Mass. 290, 294. No such arrangement was ever worked out, and there is nothing in the record to indicate why it was not worked out. The "expectations and negotiations fall far short of a binding agreement." *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Assn.* 211 Mass. 398, 405. *Cronin* v. *National Shawmut Bank,* 306 Mass. 202, 210–211. *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.* 312 Mass. 501, 506.

There is no finding that the defendants asked the plaintiff to perform any services pending negotiations on her expected brokerage contract. Nothing which the plaintiff or the defendants said or did permits an inference that the defendants agreed that if the parties did not enter into a brokerage contract the plaintiff would be paid for any services which she performed on her own initiative in anticipation of receiving the contract. She invested much time and effort on the strength of her hope and expectation of receiving the contract. In retrospect, the failure of her hopes to materialize has shown that investment to have been unwise, but it does not create an obligation on the defendants to pay for her services. The law implies no obligation to pay on the facts found by the master. See Corbin, Contracts, §§ 72 and 75; Williston, Contracts (3d ed.) §§ 22, 22A, 91 and 91A.

The final decree is modified so as to dismiss the bill against all defendants; and as so modified it is affirmed. It thus becomes unnecessary for us to consider Oman's appeal from the interlocutory decree confirming the master's report.

*So ordered.*