ROBERT C. SHELLEY & others *vs.* ALMOND H. SMITH & another.

Suffolk.    January 7, 8, 1930. — March 31, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Partnership,* Partners' duties inter se, Dissolution, Accounting. *Contract,* Rescission. *Equity Jurisdiction,* Dissolution of partnership, Laches. *Equity Pleading and Practice,* Amendment.

It was not an improper exercise of discretion to allow the plaintiffs to amend the bill in a suit in equity for an accounting and dissolution of a partnership, after the suit had been heard by a master, by adding as an item to be accounted for by the defendants one as to which there had been a full hearing before the master.

Partners owe to each other the highest degree of good faith and fair dealing in all partnership matters, and no one of them can rightfully violate that duty for his own advantage.

One of the duties thus owed by a partner to his copartners is to disclose any material facts relating to transactions connected with partnership interests.

One of six accountants, associated under an oral agreement in a partnership as tax consultants, requested a dissolution, and, at a meeting of five of the six on January 8, proposed that the dissolution be effectual as of January 1. One of the other partners stated that he would so agree, provided there had been no new business undertaken by any partner since January 1. Each partner present stated that he had not secured any new business since that date and furnished a list of all cases he then had on hand. The meeting then adjourned to January 17, when the sixth partner could be present, at which time all partners met and assented to the arrangement. Four of the partners later learned that the other two, one of whom had proposed dissolution as of January 1, later had associated together in a new partnership and had had certain new business under negotiation between January 1 and January 8 which they had not disclosed and from which they afterwards made profits; and the four brought a suit in equity against the two to rescind the agreement to dissolve as of January 1 and for an accounting. From findings by a master, it appeared that the new business in question had been under negotiation, principally between one of the defendants and the client, since December 18; that the client had been informed of the pending dissolution and had stated that he wished the defendant negotiating with him to handle the cases; that there had been an interview between them on January 5 and that on January 6 the defendant negotiating the business had submitted terms by letter which were ac-

cepted by the client in a letter dated January 10. The plaintiffs then knew nothing of such negotiation. The master found that the negotiating defendant at the meeting of the partners on January 8 "and thereafter, intentionally failed to disclose to the plaintiffs the facts concerning his conversations and communications with" the client, and "that his purpose in failing to disclose said facts was to avoid controversy with the plaintiffs as to his liability to account to the partnership for any fees which might result from the business under discussion." The judge ruled that there was no dissolution until January 17 and directed the defendants to account for four sixths of the profits received from such new business. *Held,* that

(1) It was a reasonable inference from the facts found by the master that the agreement that dissolution should be as of January 1 was based on the understanding that no new business had been secured by any of the partners after January 1;

(2) The failure of the defendants to disclose their negotiations with the new client warranted a finding that there was a concealment of facts which the defendants must have realized they were in duty bound to disclose to their copartners;

(3) The agreement that the dissolution should be effective as of January 1 should be set aside;

(4) At least until the meeting of January 8, the fiduciary relation of partners existed among the parties, and, when the defendant who was negotiating the new business offered to handle the cases previously under negotiation on certain terms, nothing had occurred which released him from his partnership obligations;

(5) In the circumstances it was immaterial that the services of the defendant negotiating the new business personally were solicited because of his individual experience and ability in tax matters;

(6) The fact that his offer to the new client was not accepted until January 10, two days after the dissolution agreement, was not controlling even on the assumption that the partnership was dissolved on January 8;

(7) It appearing that the defendants received fees for the new business, they properly were required to pay the plaintiffs four sixths of the amount so received.

It further appeared from the findings of the master in the suit above described that, at the meeting held on January 8, it was agreed that each member who was handling contingent fee cases should continue to prosecute them to a conclusion for the benefit of the firm, and that, after the payment of expenses, the profits should be divided equally and that nothing was said about further compensation to be paid to individual members of the firm; and it was a reasonable inference that such payment was not intended. In the final decree, one of the defendants was ordered to account for a fee he received from a client whom he had procured for the partnership before January 1, whose business he had turned over to one of the plaintiffs on his promise to attend to it, and, upon discovery that the plaintiff had not attended to it by September, had taken back and attended to himself. The decree ordered him further to account to the plaintiffs for four sixths

of the fee and allowed him no other compensation personally for his services. On appeal, he contended that the partnership abandoned the case and that he was free to contract with the client and act for it in his own behalf and that in any event he was entitled to compensation for services performed as liquidating partner. *Held*, that

(1) The fiduciary duty which such defendant owed the plaintiffs continued during the time the partnership business was being settled and finally closed;

(2) The plaintiff partner's delay, without more, was not sufficient to justify such defendant's proceeding with the case in his own behalf without bringing it to the attention of his copartners and obtaining their consent thereto;

(3) Such defendant was not entitled, without becoming liable to account to the partnership, to obtain for himself in violation of his duty a profit which belonged to the firm;

(4) It not appearing that the work done by such defendant for such client differed materially from that performed by his copartners for the benefit of the firm, it was not error to refuse him compensation personally for his services in that case.

In the suit above described, it was immaterial whether the dissolution of the partnership became effective on January 8 or January 17.

The agreement sought to be rescinded in the suit above described was made on January 8 or January 17, 1923. The master found that early in 1923 the plaintiffs had knowledge that one of the defendants was prosecuting the claims of the first clients respecting which they sought an accounting, and that he received the fees paid in 1925; that it was not until December 30, 1926, that the plaintiffs learned of the successful outcome of the proceedings; and that on August 24, 1927, they made demand upon the defendants for an accounting. There was nothing to show that the defendants were prejudiced by reason of the failure of the plaintiffs to bring suit at an earlier date. The master also found that, if any claim for an accounting had been made, one of the defendants would have continued to prosecute the cases in question. The suit was brought on September 23, 1927. The defendant contended that the suit was barred by laches. *Held*, that, it not appearing that the defendants suffered any injury from delay, the defence of laches could not be sustained.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated September 23, 1927, and afterwards amended, the plaintiffs being Robert C. Shelley, Charles H. Miller, Austin E. Plumb and Daniel J. Harrigan and the defendants being Almond H. Smith and Henry A. B. Peckham.

In the bill as amended, the plaintiffs averred that they and the defendants formerly were copartners "as tax counsellors and attorneys, under the name, style and title of

'The Shelley Company'," and sought to have rescinded, because procured by fraud, an agreement of dissolution made on January 8, or January 17, 1923, that the defendants be required to account to the plaintiffs for sums which should have been included in the distribution on dissolution, and for damages.

The suit was referred to a master. Material findings by the master are stated in the opinion. From interlocutory decrees and a final decree for the plaintiffs, entered by order of *Burns,* J., and described in the opinion, the defendants appealed.

*R. G. Dodge,* (*L. D. Jennings & H. S. Davis* with him,) for the defendants.

*F. P. Garland,* (*O. W. Taylor & J. L. Hurley* with him,) for the plaintiffs.

CROSBY, J. This is a suit in equity arising out of the dissolution of "The Shelley Company," a partnership engaged in the business of tax consultants and consisting of the four plaintiffs and the two defendants. The bill seeks to have the dissolution agreement rescinded, and the defendants compelled to render an account of certain transactions alleged to have been undertaken by them in behalf of the partnership.

The case was referred to a master. He found that all the parties to the suit were tax consultants, who, previous to the formation of the partnership, had been internal revenue agents of large experience in tax matters gained in the service of the Federal government. On January 2, 1919, Miller, Smith and Plumb began business as partners, and shortly thereafter Peckham and Shelley joined the partnership which adopted the name of "The Shelley Company." There were no partnership articles, and no definite term was agreed upon for its duration. It was understood that the partners were to share the profits and expenses equally. Each of them was to give his time, energy and ability to the business, and to assist his associates in their work. The defendants, Peckham and Smith, were to devote themselves more particularly to securing business, while Shelley and Miller were to prepare claims and briefs and take charge of the manage-

ment of the office. On January 1, 1920, the plaintiff Harrigan was admitted into the firm as a partner. The firm maintained offices in Boston, Springfield and Fall River. The business was highly successful and large profits were received and divided among the partners. The defendants were very active in securing business and had charge of a large part of the total business. Smith became dissatisfied with his connection with the firm, and on December 12, 1922, told Plumb that he intended to withdraw from the partnership. Thereupon Peckham said that in the event of Smith's retirement he also would withdraw.

At the request of Smith a meeting of The Shelley Company was held in Boston at which all the partners were present except Plumb. At this meeting Smith stated that his reason for calling them together was that he had decided to withdraw from the firm. Peckham then announced that if Smith withdrew he would do likewise. A discussion followed respecting the disposition of the pending business. It was agreed that each member should be entitled to take over the retainer clients he had brought into the firm, and that each member who was handling contingent fee cases should continue to prosecute those cases to a conclusion for the benefit of the partnership. It was understood that the firm should have no interest in any new business secured or negotiated after January 8, 1923. Smith suggested that the dissolution should take effect as of January 1, 1923. Shelley stated that he would agree if there was no new business since that date. In answer to a question of Shelley each partner present said that he had not secured any new business since that date. It was then agreed by all present that the dissolution should date as of January 1, and that each member should have the fees from his retainer clients after that date. The meeting was adjourned to the following week when it was expected that Plumb would be present.

On January 17 a second meeting was held at which all the partners were present. Plumb was informed of all that occurred at the meeting on January 8, and assented to the arrangements then made.

The bill, as amended, in substance alleges that by reason

of the representations made to them by the defendants the plaintiffs consented to the dissolution as of January 1, upon the following terms and conditions among others: "(1) That each member should report, and advise the other members fully, as to all unfinished cases and business in his charge . . . on January 1, 1923; (2) That each member should advise the other members fully as to all cases and business, if any, secured . . . or under negotiation by him between January 1, 1923, and January 8, and/or January 17, 1923; (3) That all unfinished cases on hand . . . January 1, 1923, and all cases contracted for, secured or under negotiation up to the time of the said meeting on January 8, 1923, and/or January 17, 1923, should be treated as co-partnership business, and should be prosecuted and completed by the respective members thereof . . . and the profits thereof distributed in equal shares among all of the said . . . co-partners." The bill further alleges that the defendants "wilfully and fraudulently concealed from the plaintiffs certain large and lucrative cases which they . . . as members of . . . the co-partnership, had contracted . . . or negotiated for prior to January 8, 1923"; that at the meeting held on January 8, the defendants falsely represented "that they had not secured any business or contracted for or negotiated for any cases, or done any new business . . . between January 1, 1923, and January 8, 1923"; that the defendants did at this meeting held on January 8, "submit a false, incomplete and untrue report of the unfinished co-partnership business . . ." The bill further alleges that the cases of the Hathaway Manufacturing Company of New Bedford, the Acushnet Mills of New Bedford and Stoughton Mills were fraudulently concealed from the plaintiffs by the defendants. These were tax refund or abatement cases. It is further alleged that the defendants, having obtained the dissolution agreement by fraud, thereafter prosecuted for their sole benefit the above cases secured or negotiated between January 1 and January 8, and have refused to account to the plaintiffs for the proceeds. The bill includes a prayer that the agreement of January 8 be set

aside and that the defendants be ordered to render a true account of all partnership business done by them and pay over the proceeds thereof.

The answers deny that the dissolution agreement was to be effective January 1, 1923, because of any representations made by the defendants or that the dissolution was upon the terms stated in the bill, or that the defendants fraudulently concealed from the plaintiffs cases or business belonging to the partnership, or that they have failed to account for the proceeds of partnership cases. The answers also aver that the defendants have been guilty of laches in bringing the bill. As counsel for the plaintiffs admitted at the hearing in the Superior Court that the partnership was not entitled to an accounting with reference to services rendered the Stoughton Mills, that case need not be considered.

The trial judge in his "Rulings and Order for Decree" allowed the plaintiffs' motions to amend the bill; overruled the defendants' objections to the master's report; ruled as matter of law that the partnership was not legally dissolved until January 17, 1923; denied the defendants' requests for rulings so far as inconsistent with "the facts found and rulings" made by the master and by the judge; and confirmed the master's report. In accordance with these rulings interlocutory decrees were entered from which the defendants appealed. A final decree was entered ordering the defendants to account to the partnership for the sum of $80,057.47 with interest from August 24, 1927, to October 31, 1929, amounting to $10,497.85, making a total sum of $90,555.32, and that the defendants within thirty days from the date of the decree pay to the plaintiffs four sixths of said sum. The decree also ordered the defendant Peckham to account to the partnership for the total sum of $14,154.94, which included interest, and that Peckham within thirty days from the date of the decree pay over to the plaintiffs four sixths of that amount. The defendants appealed from the final decree.

The allowance of the plaintiffs' motions to amend the bill was a matter within the sound judicial discretion of the

judge. No abuse of such discretion appears. *Reno* v. *Cotter*, 239 Mass. 581, 583. *Adams* v. *Grundy & Co. Inc.* 256 Mass. 246, 249. *A. T. Stearns Lumber Co.* v. *Howlett*, 264 Mass. 511, 515. By the second motion to amend the plaintiffs sought to add to the cases for which it was alleged the defendants were required to account that of the Massasoit Manufacturing Company. Although this case was not specifically mentioned in the original bill, testimony relating to it was received at the hearings before the master, and apparently a full hearing was had on that issue. The amendment was properly allowed so that the pleadings would conform to the proof. *Narragansett Amusement Co.* v. *Riverside Park Amusement Co.* 260 Mass. 265, 276, 277.

The defendants contend that they are not accountable for fees received from the Hathaway Manufacturing Company and the Acushnet Mills Corporation for the reason that they were not cases "on hand" belonging to the partnership on January 1 or on January 8, 1923. The evidence is not reported; the master's findings relating to these cases must stand as it does not appear that they were inconsistent, contradictory or plainly wrong. *Coolidge* v. *Old Colony Trust Co.* 259 Mass. 515, 517. The master found that on December 18, 1922, one Stanton, the treasurer of both these companies, wrote a letter to The Shelley Company requesting an interview with Peckham for the purpose of discussing Federal taxes affecting these companies. This letter apparently did not come to the attention of any partner, and on December 26, 1922, Stanton again wrote to The Shelley Company enclosing a copy of his letter of December 18. Smith opened this letter in Shelley's absence and sent a reply promising to arrange a conference after January 1. Subsequently Smith arranged an interview for Peckham with the auditor of the companies to be held in New Bedford on January 5, and informed Peckham of the appointment so made. Peckham went to New Bedford and discussed at length with Stanton and the auditor the matter of certain additional excess profits taxes which had been collected from the corporations, and in regard to which the corporations de-

sired to secure refunds. Peckham informed Stanton that he was retiring from The Shelley Company and was going into business for himself, whereupon Stanton said he would like to have Peckham handle the cases. Peckham replied that it would be necessary to have powers of attorney and that it was the practice to take such cases on contingent fees. The matters of terms and fees were discussed, and Peckham promised to write Stanton stating on what terms he would handle the cases. On January 6 he wrote Stanton on the letter head of The Shelley Company that he would handle the cases on an amount equal to twenty per cent of any abatement saved and twenty-five per cent of any refund secured. He received no reply to his letter of January 6 from the officials of the Hathaway or Acushnet mills until after the partnership meeting of January 8. Smith did not learn of the discussion between Peckham and Stanton until late in January, 1923. Neither defendant mentioned at the meetings of the copartners or otherwise the conversations with Stanton, or the fact that Peckham had been asked to undertake the work for the Hathaway or Acushnet corporations.

It is a reasonable inference from facts found by the master that the agreement, made at the meeting held on January 8, that the dissolution of the firm should date as of January 1, was based on the understanding that no new business had been secured by any of the partners after January 1. Moreover the master found that the plaintiffs "would not at the meeting of January 8 have assented to the dating back of the dissolution to January 1 if they had known of" the defendants' correspondence and conferences with the officials of the Hathaway and Acushnet mills. It was further found "that the defendant Peckham, at the meeting of January 8, 1923, and thereafter, intentionally failed to disclose to the plaintiffs the facts concerning his conversations and communications with officials of the Hathaway Manufacturing Company, [and] the Acushnet Mills Corporation . . . ; that his purpose in failing to disclose said facts was to avoid controversy with the plaintiffs as to his liability to account to the partner-

ship for any fees which might result from the business under discussion."

The partners owed to each other the highest degree of good faith and fair dealing in all partnership matters, and none could rightfully violate that duty for his own advantage. *Flint* v. *Codman,* 247 Mass. 463. This duty devolved on each to disclose to the others any material facts relating to transactions connected with partnership interests. *Hawkes* v. *Lackey,* 207 Mass. 424, 432, 433. *Arnold* v. *Maxwell,* 223 Mass. 47, 49, 50. It is plain from the facts found by the master that the Hathaway and Acushnet cases were of such a nature as to be material in arriving at an agreement for the dissolution of the partnership. This conclusion is strengthened by the interpretation which the defendants themselves placed on other cases similar to those in question. It appears that at the meeting held on January 8, Miller suggested that each partner should furnish a list of all cases he had on hand involving contingent fees, and Shelley wrote down the names of the cases as each partner called them off. Included in the defendant Smith's list of unfinished cases was that of S. P. Burton & Co. Respecting that case Smith testified that Burton had consulted him in regard to a tax matter which Burton thought he would have taken up, but nothing further was ever done about it; that "Smith thought from his talk with Burton that it might develop into business, and if it did, he thought he ought to account for it as partnership business." It was further found by the master that on Peckham's list of cases "on hand" was that of Driscoll, Hall & Church for whom, as Peckham testified, nothing had been done before the dissolution "except to get the story." The failure to disclose the defendants' dealings with the Hathaway and Acushnet mills officials warranted a finding that there was a concealment of facts which the defendants must have realized they were in duty bound to disclose to their copartners. It follows that the agreement to date back the dissolution of the partnership to January 1, 1923, should be set aside.

As the agreement that the dissolution should be effective as of January 1 is to be rescinded, the question remains

whether the defendants must account to the partnership for the fees eventually recovered from the Hathaway and Acushnet cases. On January 10, 1923, the representative of these two corporations wrote Peckham accepting his terms as stated in his letter of January 6. Subsequently Peckham did a large amount of work in the prosecution of these claims, and ultimately fees amounting to $80,057.47 were divided between Smith and Peckham who had formed a partnership. The trial judge ruled "that the partnership [between the plaintiffs and the defendants] was not legally dissolved until January 17, 1923, the date when all the partners were present." We do not deem it necessary to consider the correctness of this ruling for the reason that when Stanton wrote to The Shelley Company asking for an interview with Peckham the partnership agreement was in full force and effect. On January 5, the date of Peckham's conference with Stanton, the partnership agreement was still in existence. With the exception of Plumb, none of the plaintiffs had any intimation before January 5 that a dissolution was contemplated. Up to that time all that appeared was that the defendants had communicated to Plumb an intention to retire from the firm at some indefinite future date. At least until the meeting of January 8, the fiduciary relation of partners existed between the parties, and Peckham was bound to act for the best interests of the partnership. At the date of the conference with the officers of the Hathaway and Acushnet Mills, when Peckham offered to handle the cases on certain terms, nothing had occurred which released him from his partnership obligations. He could not secretly enter into competition with the firm under the guise of procuring employment for himself after dissolution without any notice to or knowledge by his copartners of impending dissolution. To relieve himself of his duty to secure the business for the firm, and before he could be relieved of his trust obligations, it was his duty to make full disclosure of all the material facts to his copartners. *Holmes* v. *Darling*, 213 Mass. 303, 305, 306. *Deutschman* v. *Dwyer*, 223 Mass. 261, 264. *Mitchell* v. *Read*, 84 N. Y. 556. *Miller* v. *O'Boyle*, 89 Fed. Rep. 140, 142. *Williamson* v. *Monroe*, 101 Fed. Rep.

322, 335. In the circumstances it is immaterial that the services of Peckham personally were solicited because of his experience and ability in tax matters. *Lindsay* v. *Swift*, 230 Mass. 407, 414. The fact that his offer to the Hathaway and Acushnet corporations was not accepted until January 10, two days after the dissolution agreement, is not controlling even on the assumption that the partnership was dissolved on January 8. If, as we hold, in all the obligations before January 8 Peckham was bound to act in the interests of the firm, it is of no consequence that his offer was accepted two days after the dissolution rather than prior to dissolution. The rights of the parties are to be determined by the nature of their obligations.

The question whether the defendants are required to account for fees received from the Massasoit Manufacturing Company will next be considered. As previously stated, it was agreed that at the meeting held on January 8 each member who was handling contingent fee cases should continue to prosecute them to a conclusion for the benefit of the partnership, and that after payment of expenses incurred, the profits should be divided equally. Included in the list of cases given by Peckham as being in his charge was a claim of the Massasoit Manufacturing Company for a refund of Federal taxes. Sometime before the meeting the plaintiff Miller had been asked by Peckham to take care of this case and Miller had agreed to do so, but had done nothing except to attend a conference with Peckham and the company's treasurer. In September, 1923, Peckham received an inquiry from the company as to what progress had been made. He again asked Miller to take up the prosecution of the claim and the latter agreed to do so, but no claim was filed, and nothing further was done by any of the plaintiffs. On February 16, 1924, Peckham called at the office of the Massasoit company and learned that nothing had been done. Finding that the claim would shortly be barred by statutory limitation, he agreed with the company to handle the case on a contingent fee basis. He prosecuted the case to a successful termination and recovered a fee which, after deducting expenses, amounted

to $12,513.99. Nothing was said by him to his copartners about this matter, nor were they aware that he had undertaken the prosecution of the claim or that he had received any fee. The master found that the value of this case as an asset of the partnership at the time of dissolution was equal to one half the final profit, and that if Peckham as matter of law is entitled to compensation then he is entitled to retain one half of the profit. The final decree ordered him to account to the partnership for $14,154.94, the amount received together with interest from August 24, 1927, to October 31, 1929, no compensation being allowed to him personally for his services. He contends that the partnership abandoned the case and that he was free to contract with the company and act for it in his own behalf; that in any event he is entitled to compensation for services performed as liquidating partner.

It is not denied that the contract with the Massasoit company was a partnership asset on January 8. Peckham admitted that the case was to be handled by him for the benefit of the firm. Unless the partnership abandoned the case, he had no right secretly to secure it for himself. The only evidence of abandonment was the failure of Miller to prosecute it in accordance with his agreement with Peckham. As Peckham listed the case as being in his charge, the plaintiffs were justified in assuming that he would seasonably prosecute it for the benefit of the firm. Miller's delay, without more, was not sufficient to justify Peckham's proceeding with the case in his own behalf without bringing it to the attention of his copartners and obtaining their consent thereto. The fiduciary duty which he owed the plaintiffs continued during the time the partnership business was being settled and finally closed. *Castle* v. *Marks*, 50 App. Div. (N. Y.) 320, 322. He was not entitled, without becoming liable to account to the partnership, to obtain for himself in violation of his duty a profit which belonged to the firm. *Holmes* v. *Darling, supra. Lindsay* v. *Swift, supra. Castle* v. *Marks, supra.* St. 1922, c. 486. The case is analogous in principle with a situation where one partner secretly takes a lease in his own name of the premises where

the firm business is conducted. *Leach* v. *Leach,* 18 Pick. 68. *Lurie* v. *Pinanski,* 215 Mass. 229. Whether Peckham was entitled to compensation for his services in behalf of the Massasoit company depends upon the particular facts of the case. *Rutan* v. *Coolidge,* 241 Mass. 584, 598. At the meeting held on January 8, it was agreed that each member who was handling contingent fee cases should continue to prosecute them to a conclusion for the benefit of the firm, and that after the payment of expenses the profits should be divided equally. Nothing was said about compensation to be paid to individual members of the firm and it is a reasonable inference that such payment was not intended. The two cases which produced by far the largest fees were carried on by members of the firm other than Peckham. It does not appear that the work done by him in the Massasoit case differed materially from that performed by his co-partners for the benefit of the firm. It cannot be said that in refusing him compensation for his services in this case there was error. It is apparent from the findings of the master that the partnership had not been dissolved before January 8. It was the duty of Peckham at the meeting held on that day fully to disclose to his copartners the facts respecting his dealings with the officers of the Hathaway and Acushnet mills and with the officers of the Massasoit company as cases "on hand." In these circumstances it is immaterial whether the dissolution of the partnership became effective on January 8 or January 17.

This suit was begun September 23, 1927. It is the contention of the defendants that, even if they would have been accountable to the plaintiffs for fees received in the Hathaway, Acushnet and Massasoit cases had proceedings been seasonably instituted, laches constitute a bar to the present suit. We are unable to agree with this contention. Although the master found that early in 1923 the plaintiffs had knowledge that Peckham was prosecuting the claims of the first two corporations above mentioned, and that he received the fees paid in 1925, he further found that it was not until December 30, 1926, that the plaintiffs learned of the successful outcome of the proceedings; that on August

24, 1927, they made demand upon the defendants for an accounting. There is nothing to show that the defendants were prejudiced by reason of the failure of the plaintiffs to bring suit at an earlier date. *Mascari* v. *Mascari*, 255 Mass. 92. *Crofts* v. *Board of Assessors of North Adams*, 261 Mass. 191, 202, 203. The master found that if any claim for an accounting had been made "Peckham would have continued to prosecute the cases in behalf of the respective companies." As it does not appear that the defendants suffered any injury from the delay, the defence of laches cannot be sustained. *Cohen* v. *Bailly*, 266 Mass. 39. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. It follows that the final decree ordering the defendants to account for the fees received from the three companies above referred to was rightly entered.

For the reasons hereinbefore stated, the objections to the master's report which have been argued cannot be sustained. The others are treated as waived. Some of the defendants' requests for rulings, although correct as abstract propositions of law, were not applicable to the facts in the case at bar. The others could not properly have been given. We do not deem it necessary to discuss the requests in detail. A careful examination of them fails to show any error of law in the refusal of the trial judge to give them. It follows that the interlocutory decrees and the final decree must be affirmed.

*Ordered accordingly.*