[No. 2518–2.   Division Two.   May 11, 1977.]

DAVID L. BOVY, *Respondent,* v. GRAHAM, COHEN
& WAMPOLD, ET AL, *Appellants.*

*Earl P. Lasher III* and *Lasher & Sweet, P.S.,* for appellants.

*John Goldmark* and *Schroeter, Jackson, Goldmark & Bender,* for respondent.

REED, J.—Defendants Thomas P. Graham, Norman W. Cohen, and Thomas S. Wampold appeal from a decree of specific performance in favor of their former law partner, David L. Bovy. The events giving rise to this appeal began in 1970 when, pursuant to a written agreement, the parties formed a partnership for the practice of law. Plaintiff Bovy assumed the duties of managing partner, and the parties thereafter practiced as partners until July of 1973, at which time the members of the firm agreed to a dissolution of the partnership.

Because the original partnership agreement did not contain adequate provisions for the disposition of fees upon dissolution of the partnership, a committee consisting of all of the parties was formed for the purpose of drafting an addendum to the partnership agreement. Although the terms of the addendum were negotiated between July 11 and July 20, 1973, the actual addendum agreement was not signed until August 30, 1973. In addition to providing for a monthly accounting of receipts and costs on partnership files, the addendum also contained the following provision relating to division of fees:

7. DIVISION OF FEES ON PARTNERSHIP FILES: Division of future fees received shall be determined by the nature of the fee arrangement as follows:

A. Regular billing files (hourly basis, or for individual work such as Employer representation in industrial insurance). All accounts receivable as of August 1, 1973, shall be divided equally; all future billings for future work to be retained by the individual partner.

B. All other files, including files in progress with a pre-determined fee, contingent fee files, or where fee cannot

be determined until a later time, such as personal injury, representing claimants in industrial insurance, collection accounts, etc. shall have fees divided as follows:

1. The four partners shall share equally in 60% of the proceeds;

2. The partner retaining the file shall retain the balance of 40%.

Nothing herein shall restrict a partner from continuing new work on an old partnership file, and all work done on a file which is billed on a periodic or hourly basis after July 31, 1973 shall be the property of the partner performing the work.

On December 18, 1973, after it became apparent that plaintiff Bovy's monthly share under the addendum was greatly disproportionate to his expected contribution, the addendum agreement was repudiated by defendants, who had continued as partners. As justification for their repudiation, defendants cite Bovy's failure to disclose the number and value of his contingent fee files at the time the addendum was negotiated. Defendants further argue that they would never have agreed to the addendum had they known the true extent of Bovy's work in progress. In support of their contention defendants refer to portions of the record containing both Bovy's admission that he did not disclose the extent of his files, and his acknowledgment that he had only one file subject to the agreement.[1] On appeal we are presented with the issue of whether, after dissolution of the partnership, Bovy was subject to a fiduciary duty of disclosure, whereby he was required to divulge the number and value of his contingent fee files during the negotiation of the addendum agreement. We hold that a duty of full disclosure does exist during the winding up of partnership affairs, that Bovy breached this fiduciary duty of disclosure, and that such nondisclosure makes it improper to specifically enforce the addendum agreement in favor of plaintiff Bovy.[2]

---

[1] The trial court's findings indicate that Bovy had fully satisfied his obligation under the addendum by paying defendants $1,203.62. The trial judge also found that defendants owed Bovy $11,781.31, of which $3,743.19 had been paid.

[2] We express no opinion as to whether Bovy does in fact have a partnership interest in defendants' files, and if he does, what value that interest has.

█ It is well settled in Washington law that the relationship among partners is fiduciary in character and imposes upon the partners the obligation of candor and utmost good faith in their dealings with each other. *E.g., In re Estate of Wilson,* 50 Wn.2d 840, 315 P.2d 287 (1957); *Waagen v. Gerde,* 36 Wn.2d 563, 219 P.2d 595 (1950); *Bank v. Nelson,* 199 Wash. 631, 92 P.2d 711 (1939); *see also* RCW 25.04.210. That the fiduciary standard is a high one is aptly expressed in the following quotation from Justice Cardozo's opinion in *Meinhard v. Salmon,* 249 N.Y. 458, 463–64, 164 N.E. 545, 546, 62 A.L.R. 1 (1928):

> [C]opartners, owe to one another, . . . the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

(Citation omitted.)

The good faith obligation of a fiduciary relationship not only demands that a partner should not make any false statement to his copartner, but also that he abstain from any and all concealment concerning matters pertaining to the partnership business. In *Herring v. Offutt,* 266 Md. 593, 597, 295 A.2d 876, 879 (1972), the court stated:

> The partnership relationship is of a fiduciary character which carries with it the requirement of utmost good faith and loyalty and the obligation of each member of the partnership to make full disclosure of all known information that is significant and material to the affairs or property of the partnership.

The duty of full disclosure among partners has also been recognized in Washington. *Karle v. Seder,* 35 Wn.2d 542, 214 P.2d 684 (1950); *see also* RCW 25.04.200.

We now turn to the question of what effect dissolution of the partnership has upon the fiduciary relationship of copartners. In *Lavin v. Ehrlich,* 80 Misc. 2d 247, 363 N.Y.S.2d 50 (1974), the court held that while there may be a relaxation of a partner's duties to his copartner in matters that look beyond the business of the newly–dissolved partnership, the good faith and full disclosure exacted of partners continues during the winding up of the partnership affairs. The California Supreme Court has similarly held that during negotiations pursuant to a dissolution, each partner must deal fairly with his copartners and must not conceal from them important matters within his own knowledge concerning the business of the partnership. *Vai v. Bank of America Nat'l Trust & Sav. Ass'n,* 56 Cal. 2d 329, 364 P.2d 247, 15 Cal. Rptr. 71 (1961). *Accord, Shelley v. Smith,* 271 Mass. 106, 170 N.E. 826 (1930); *Stein v. Jung,* 492 S.W.2d 139 (Mo. Ct. App. 1973); *Svihl v. Gress,* 216 N.W.2d 110 (N.D. 1974); *Auld v. Estridge,* 86 Misc. 2d 895, 382 N.Y.S.2d 897 (1976); *Claude v. Claude,* 191 Ore. 308, 228 P.2d 776, 230 P.2d 211 (1951); *Mathis v. Cactus Drilling Corp.,* 430 S.W.2d 78 (Tex. Civ. App. 1968). *See generally* 68 C.J.S. *Partnership* § 354(b) (1950). Although presented with a slightly different factual situation, the court in *Karle v. Seder, supra,* noted that even though personal relations between partners have deteriorated to the extent that neither partner has any confidence in the other (as is presumably the case in many partnership dissolutions), that fact does not relieve the partners of their fiduciary obligations to each other. Based on the great weight of authority and the apparent direction of the Washington courts, we conclude that plaintiff Bovy was obligated to fully disclose any information pertaining to the winding up of partnership affairs.[3]

<hr />

[3]We also note that as managing partner, Bovy occupied a higher fiduciary position and had the burden of dispelling all doubts concerning the discharge of

Bovy argues that the addendum agreement was not part of the winding up of partnership business, but rather represented his claim to a share of the *future receipts* on what had been partnership cases. Carrying this argument one more step, he further contends that any discussion of the fiduciary duties owing among partners during the winding up is therefore immaterial. The briefest consideration of the addendum agreement clearly demonstrates that it governs matters pertaining to the winding up of the partnership affairs. The original partnership agreement, to which the addendum is supplemental, provides that each partner has a one–quarter interest in the net profits of the firm. When read in conjunction with the original partnership agreement, the addendum, which is applicable to files opened during the existence of the partnership and not closed prior to dissolution, implicitly recognizes that each partner has an interest in the proceeds from work performed during the life of the partnership. The percentage formula for allocating receipts from those files which required additional work subsequent to dissolution accounts for the fact that a portion of the total return expected for each file is attributable to work performed when the parties were operating as partners. Accordingly, even though the agreement provides for a division of fees received after dissolution, the disposition of such receipts is to be considered part of the winding up because it relates to compensating each partner for his interest in the value of work performed prior to when the partnership dissolved.

Having determined that Bovy had a fiduciary duty of full disclosure with respect to matters pertaining to the winding up, and having further concluded that the addendum agreement was a part of the winding up and that Bovy did not make a full disclosure during the negotiation of the

his duties. In the event a managing partner is unable to satisfy this burden, all doubts would ordinarily be resolved against him. *Conrad v. Judson,* 465 S.W.2d 819 (Tex. Civ. App. 1971); *Bakalis v. Bressler,* 1 Ill. 2d 72, 115 N.E.2d 323 (1953).

addendum, we now consider the effect Bovy's breach has on his attempt to specifically enforce the addendum agreement. As a general rule a suit for specific performance is not defeated by the mere fact that there has been a failure of one party to disclose a material fact. H. McClintock, *Principles of Equity* § 73 (2d ed. 1948). However, if the party guilty of nondisclosure is under a duty to disclose material facts to the other party, then the fact of such nondisclosure is a defense to a suit for specific performance. *Principles of Equity, supra; see also* 2 Restatement of Contracts §§ 471(c), 472 (1932). In *Huston v. Harrington,* 58 Wash. 51, 107 P. 874 (1910), the court held that the existence of a confidential relationship with a concomitant duty of disclosure precluded a suit for specific performance when there was nondisclosure of a material fact. Bovy's breach of the confidential relationship and duty of disclosure existing among partners bars him from seeking performance of the addendum agreement. Accordingly, the judgment of the trial court is reversed.

PETRIE, C.J., and RINGOLD, J. Pro Tem., concur.