[No. 13884-7-I. Division One. June 16, 1986.]

MARTIN N. SANDLER, *Appellant,* v. U. S. DEVELOPMENT COMPANY, ET AL, *Respondents.*

*Brian L. Nordwall* and *Franco, Asia, Bensussen & Coe,* for appellant.

*Dale B. Ramerman,* for respondents.

SCHOLFIELD, C.J.—The trial court found Martin Sandler was unlawfully terminated from his employment and was entitled to back salary of $123,750, less offsets awarded to defendants which exceeded the amount of back pay by $2,807.45, resulting in a judgment against Sandler in that amount. Sandler appeals and defendants cross–appeal. We reverse an offset of one–half of defendants' accounting expenses and modify the amount of back salary awarded. All other aspects of the judgment are affirmed.

## FACTS

U. S. Development Co., Inc. (USDC), was formed as a corporation in 1972 to conduct real estate development projects. Martin Sandler was a director and president of USDC. In 1973, USDC, J & B Investments and Martin

Sandler became general partners in a limited partnership called Riverfront Associates, formed to build and develop the Sheraton Hotel in Spokane. Approximately 19 limited partners, in addition to the general partners, participated in the venture. Sandler and Donald K. Barbieri (one of the owners of J & B Investments) became comanagers of the limited partnership. The hotel was constructed largely on borrowed money and opened in July 1975. In August 1976, Barbieri was terminated as comanager of Riverfront, pursuant to section 5.3(b) of the limited partnership agreement:

> At their option and by agreement of a majority of the General Partners, they may at any time withdraw their approval of the Managers and thereby terminate the appointment of Martin N. Sandler and/or Donald K. Barbieri, or any successor Manager, as Managers. . . .

Exhibit 1.

Sandler continued as manager of the hotel. Due to the heavy debt service, the hotel did not show a profit, and the partners were occasionally called upon to make further investments.

In 1979, an arrangement was made to sell the hotel. Riverfront retained a 10–year management contract with Spoke, Ltd., the assignee of the purchaser. This was considered advisable because of the low down payment made by the purchaser.

The trial court found that Sandler was being paid for his dual role as managing partner of Riverfront and president of USDC. USDC apparently had no significant income other than $120,000 per year, which was earned by Riverfront for managing the Sheraton Hotel and then passed on to USDC. USDC issued Sandler's paychecks. Some of the limited partners were on the USDC board of directors. With USDC and Sandler as general partners of Riverfront, it was not unusual for management decisions involving both Riverfront and USDC to be made at meetings of the USDC board of directors.

At a USDC board of directors meeting on March 31,

1980, a motion was unanimously approved to postpone the scheduled agenda in order to take up other matters. At that point, Beryl Ash was unanimously elected as chairman of the board of USDC. As chairman of the board, Ash immediately terminated Sandler as manager of Riverfront and relieved Sandler of all duties regarding the operation of the Sheraton Hotel. Ash was then elected as president of the board of directors of USDC and then relieved Sandler of authority to make contracts for USDC or Riverfront. These actions effectively removed Sandler from any further management responsibilities in USDC, Riverfront or the hotel. Sandler took no immediate action to resist his termination, but eventually filed this lawsuit against Ash and USDC. On January 18, 1983, Riverfront dissolved and reconstituted itself with only USDC as general partner.

The trial court's findings, conclusions and judgment can be summarized as follows:

1. Sandler was wrongfully terminated as managing partner.

2. The limited partnership was dissolved and reconstituted, removing Sandler as general partner, on January 18, 1983.

3. Sandler received his salary in his dual capacity, spending 75 percent of his time as managing partner of Riverfront and 25 percent of his time on other USDC projects.

4. The defendants owed Sandler back salary from March 31, 1980, through January 18, 1983, in the amount of $123,750. Sandler had mitigated the loss to the extent of $25,000, making his net salary loss $98,750.

5. Sandler at all times acted in good faith, but was inadvertently overpaid salary in the amount of $68,385, which amount would be offset against back salary. Certain expenses incurred by Sandler charged to Riverfront or USDC should be charged to Sandler in the amount of $16,995.

6. Sandler should pay defendants one–half of the costs of producing an accounting, or $16,250.

7. The judgment against Sandler in favor of USDC was

entered for $2,807.45 plus costs.[1]

## WRONGFUL TERMINATION

On March 31, 1980, the date of Sandler's termination, he and USDC were the general partners of Riverfront. Section 5.3(b) of the limited partnership agreement was written in contemplation of three general partners. A majority of the three was needed to remove a manager. When Barbieri was removed as manager, no one replaced him, and the partnership agreement was not amended. At the time of the attempted termination of Sandler, a majority vote was not possible unless Sandler agreed to his removal. Thus, it would appear that on March 31, 1980, Sandler was not legally terminated. Nevertheless, his authority was effectively ended and his compensation stopped.

Customarily, limited partners leave the management of limited partnerships to one or more general partners to avoid personal liability for partnership debts and defaults. RCW 25.10.190. The partnership agreement here is consistent with the statute. Section 5 of the agreement placed "exclusive control of the business of the Partnership" in the general partners. Exhibit 1.

Replacing general partners who have withdrawn or bringing in additional general partners are significant matters to all the partners. Bringing in additional general partners requires "the specific written consent of each partner" unless otherwise provided in the agreement. RCW 25.10-.220. Additionally, since the agreement here has no express provision for replacing a general partner, the matter would have to be referred to all the partners for resolution.

The requirement of a majority vote among the three general partners for the removal of a manager was set forth in the agreement and cannot be ignored. The only alternative, if an impasse is reached by the general partners, is to refer the matter to all the partners for resolution, which is precisely what was done on January 18, 1983. Therefore,

---

[1]Using the amounts set forth in the findings of fact, the judgment should have been $2,810.45.

the trial court correctly awarded Sandler back salary to that date.

■ Defendants contend that Sandler is not entitled to recover back salary because his salary was paid for performance of duties as USDC president and that Sandler was lawfully terminated as president by the USDC board. We view this as simply an argument which is essentially factual. The trial court resolved this issue on substantial evidence. It is implicit in the trial court's judgment that it concluded that Sandler's compensation was paid as manager for Riverfront, as provided in the limited partnership agreement. Management of the hotel was the only activity that was generating income for Riverfront or USDC. The trial court's conclusion that Sandler's compensation was terminated because his services as manager of Riverfront and the hotel were terminated is based upon substantial evidence and will be sustained. See *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

### ADJUSTMENT IN BACK SALARY AWARD

Sandler contends that the trial court, in calculating the amount of back salary, failed to include the period from January 1 through January 18, 1983. USDC contends that the omission is a result of an arithmetical error on the part of Sandler and therefore should be treated as invited error.

■ Invited error arises when a party requests a ruling which is erroneous and then seeks to claim error from that ruling on appeal. See *Graham v. Graham*, 41 Wn.2d 845, 252 P.2d 313 (1953); 5 Am. Jur. 2d *Appeal and Error* § 713 (1962). Failure to accurately calculate the amount due under the court's ruling through inadvertence is not invited error. The trial court clearly intended to grant Sandler back pay through January 18, 1983. We view this as a mathematical error in calculating the amount of the judgment, which can be corrected on appeal. The judgment should be modified by adding to the amount of the award to Sandler for back salary the sum of $2,219.18.

### MITIGATION OF LOSS FINDING

During the same period of time for which Sandler claims back salary, he earned $82,250 in other business activity. He testified these activities took 60 percent of his time. The trial court treated this as partial mitigation of his loss because of evidence that managing the hotel had taken 75 percent of his time. Had he still been employed by Riverfront, he could not have devoted 60 percent of his time to outside business activities. The trial court resolved the issue by finding that $25,000 of the $82,250 should be applied in mitigation of damages.

Section 5.2 of the limited partnership agreement reads in pertinent part:

> The General Partners . . . may without restriction engage in . . . other business ventures . . . and neither the Partnership nor any of the other partners . . . shall have any right in or to said independent ventures or to the income or profits derived therefrom . . .

Exhibit 1.

Sandler argues that since section 5.2 permits a general partner to engage in outside ventures, the mitigation doctrine does not apply. He also argues that since section 5.2 prohibits the partnership or any other partner from acquiring any right to the independent ventures of a general partner, USDC cannot be granted an offset to his back salary claim.

We reject Sandler's contentions. The fact that he was permitted to engage in outside ventures does not prohibit a trial court finding that his earnings after termination had the legal effect of mitigating his loss to the extent of $25,000. His contention that allowing the mitigation offset violated that portion of section 5.2, preventing the partnership from gaining any right "in or to said independent ventures", has no merit. Allowing $25,000 in mitigation of his claim is in effect nothing more than a money judgment and does not give the partnership or USDC any interest or right in the ventures themselves.

The allowance of $25,000 in mitigation of the back salary

claim will be affirmed.

## USDC Claim for Duplicate Reimbursements

In its cross appeal, USDC claims that exhibit 79 is uncontroverted and shows that USDC is entitled to recover judgment against Sandler for duplicate reimbursements in the amounts of $10,394.95 and $3,046.13 for expense draws taken in excess of submitted expense vouchers.

In finding of fact 14, the trial court gave USDC judgment against Sandler for certain listed items totaling $16,925.45. In conclusion of law 5, the trial court stated in part:

> The Plaintiff has at all times acted in good faith and did render timely expense accounts to the defendant USDC which were accepted and acquiesced in by the board of USDC. There should be no offset allowed for any claimed excess expense other than as specifically set forth in paragraph 14 above totaling $16,995.00 [*sic*] .

This amount did not include the duplicate reimbursements for $10,394.95 or $3,046.13. "Conclusion of law 5" is essentially a series of factual findings and will be treated on appeal as findings of fact. *Stastny v. Board of Trustees,* 32 Wn. App. 239, 647 P.2d 496, *review denied,* 98 Wn.2d 1001 (1982), *cert. denied,* 460 U.S. 1071 (1983).

The court resolved the contention of USDC relative to the claim for additional reimbursement by disallowing USDC's claim beyond the amount allowed in finding of fact 14. From its oral opinion, it is apparent that the trial court examined exhibit 79 and found it unpersuasive. It is also apparent that the expense items discussed here were the subject of much testimony and argument and while the numbers may be uncontroverted, the claim was contested. We find no reason to disturb the trial court's ruling on this factual issue.

## Claimed Error in Calculation of Amount of Overpaid Salary

Sandler contends that the trial court erred in finding that he was overpaid salary in the amount of $68,385 and that the overpayment was only $43,765. He bases his argument

on material contained in the affidavit of his accountant, Robert Neiman. In connection with that affidavit, Sandler also assigns error to the action of the trial court in limiting his presentation of accounting rebuttal evidence to written evidence only. Sandler argues that he was unaware USDC was going to counterclaim for damages based on accounting evidence until the day of trial and for this reason, he was unable to present rebuttal accounting evidence during the trial. The trial court allowed Sandler to present his rebuttal accounting evidence in written form after trial and before presentation of findings. The evidence was presented in the form of Neiman's affidavit, which was considered by the court before final judgment was entered.

Sandler now requests us to modify the trial court's finding on the amount of salary overpayment based on the Neiman affidavit or, in the alternative, remand to the trial court for a retrial of the accounting issues challenged by the Neiman affidavit.

Both requests must be rejected. At the start of the trial, Sandler stipulated to an amendment of the defendants' answer so that the prayer for relief on USDC's counterclaim was amended to ask for a money judgment for amounts proven at trial through the accounting process. At no point during the trial did Sandler seek a continuance of the trial based upon surprise at the type of evidence he was required to face. Our civil rules provides adequate means by which a party can discover the issues that will be presented during a trial and the nature and extent of the evidence that will be submitted. It has long been the policy in this state to avoid trying cases in a piecemeal fashion. The trial court did not abuse its discretion in limiting presentation of post–trial evidence to written affidavits. Resolution of the salary overpayment issue is purely factual, and where the court's finding is supported by substantial evidence, we cannot substitute our judgment for that of the trial court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

### Ruling on Sharing Costs of Accounting

The trial court found that defendants had incurred costs of $32,500 in producing the accounting evidence presented by them and concluded that one–half of that amount should be charged to Sandler. The record does not disclose the basis relied upon by the trial court for this ruling. Sandler argues the ruling was erroneous because it could only be based upon a breach of fiduciary duty and the trial court found there was no such breach.

In conclusion of law 6, the trial court concluded:

> The court finds that there is no basis for the affirmative defense as asserted by the Defendants in their Answer, Affirmative Defenses and Counterclaims, to wit, laches, waiver, estoppel, unclean hands, breaches of fiduciary duty and conduct detrimental to the partnership or, failure to state a claim upon which relief may be granted.

USDC argues that the extensive costs were incurred because the accounting records were in disarray and that Sandler was responsible. However, this is only an argument regarding essentially factual issues which is answered by conclusion of law 6.[2] USDC also argues the ruling was correct based upon the authority of *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 557 P.2d 342 (1976).

*Tang* is not authoritative here. *Tang* was an action for an accounting and dissolution of a partnership. In *Tang*, the trial court entered conclusion of law 2, reading as follows:

> [t]hat the defendant [respondent] was negligent in failing to keep books of account for the partnership, in failing to give accountings when requested by plaintiff and comingling the funds of the partnership with defendant's funds and comingling the expenses and disbursements of the partnership with defendant's expenses and disbursements.

*Tang,* at 797.

While the Supreme Court in *Tang* affirmed the

---

[2]We treat conclusion of law 6 as essentially factual findings and reviewable on that basis. *Stastny v. Board of Trustees,* 32 Wn. App. 239, 647 P.2d 496, *review denied,* 98 Wn.2d 1001 (1982), *cert. denied,* 460 U.S. 1071 (1983).

award of one-half of the attorney's fees and costs incurred by the petitioner in establishing his rights in the partnership property, the court did so on the ground that Tang's conduct amounted to a breach of his fiduciary duty to the petitioner. The authority of *Tang* cannot be applied in a case where the trial court expressly found that there was no breach of a fiduciary duty or conduct detrimental to the partnership.

Under the circumstances of this case, we are unaware of any authority or legal basis for requiring Sandler to pay one-half of the costs incurred by USDC in preparation and presentation of accounting evidence. When Sandler's active management of the hotel was terminated, there was no request of him for an accounting at that time. This issue did not arise until Sandler filed suit. It is quite apparent that the expenses incurred by the defendants in producing accounting records were produced for the purpose of supporting their contention that Sandler was indebted to USDC, rather than the other way around.

That portion of the trial court judgment charging Sandler with one-half of the cost of defendants' accounting expense was error and must be reversed.[3]

### DATE TERMINATING ACCRUAL OF DAMAGES

The trial court held that the limited partnership was effectively dissolved and reconstituted on January 18, 1983, and that the sole general partner from that date was USDC. For this reason, the trial court found that Sandler's damages accrued only up to January 18, 1983. Sandler argues that January 18, 1983, was not an effective termination date because the dissolution and reconstitution was accomplished in a somewhat clandestine manner without the knowledge of Sandler and therefore amounted to a breach of fiduciary duty owed by USDC and Ash to Sand-

---

[3]USDC contends this issue was not argued in the trial court. The record does not reflect when the matter was resolved and arguments made. The alleged error was raised in assignment of error 4 and argued in appellant's brief. We conclude the issue is properly before us.

ler. Sandler cites *Bovy v. Graham, Cohen & Wampold,* 17 Wn. App. 567, 564 P.2d 1175 (1977) for the proposition that partners, even during dissolution proceedings, have a fiduciary duty to one another to fully disclose all matters relating to partnership business. We have no quarrel with the proposition for which *Bovy* is cited. However, *Bovy* would appear to have no application here. Sandler is quarreling with the trial court's resolution of a factual matter. The argument is answered by the trial court's finding that the dissolution and reconstitution effectively removed Sandler as a general partner as of January 18, 1983. It is implicit in such a ruling that the dissolution and reconstitution was accomplished by legal means. To support his theory, Sandler needs a finding of fact to support his claim that a fiduciary duty was breached. Without such a finding, we must treat the issue as having been resolved against Sandler. *In re Eggers,* 30 Wn. App. 867, 638 P.2d 1267 (1982). Even if we disagreed with the trial court's conclusion on this issue, we cannot substitute our judgment for that of the trial court on factual matters. *Thorndike v. Hesperian Orchards, Inc., supra.*

## CONCLUSION

1. Back salary for the period January 1 through 18, 1983, will be credited to Sandler in the amount of $2,219.18.

2. The award of $16,250 to USDC, representing one-half of USDC's costs of producing accounting evidence, is reversed.

3. The trial court judgment is otherwise affirmed.

4. Crediting Sandler with $2,219.18 and $16,250 changes the final judgment herein to a judgment in favor of Sandler against USDC and Ash in the amount of $15,658.73.

RINGOLD and WEBSTER, JJ., concur.