[No. 11405-4-II.   Division Two.   July 5, 1989.]

PEOPLES NATIONAL BANK OF WASHINGTON, *Respondent,* v. BIRNEY'S ENTERPRISES, INC., *Appellant.*

___

*Catherine Wright Smith* and *Edwards & Barbieri,* for appellant.

*Philip G. Hubbard, Philip A. Talmadge, B. Jeffrey Carl,* and *Karr Tuttle Campbell,* for respondent.

WORSWICK, J.—Birney's Enterprises, Inc., appeals a judgment and an order for writ of restitution in favor of Peoples National Bank in this unlawful detainer action. Birney's claims that it has the right to possession under an unrecorded 20–year lease. The dispositive issue is whether the Bank had a duty, when it acquired its interest in the property, to make an inquiry that would have disclosed the lease. The trial court held that the Bank had no such duty. We reverse.

We pause here to issue a warning. Although formal written findings of fact were prepared and presented by the

Bank's attorney,[1] conspicuously absent are any formal findings on the critical events. Rather, the formal findings merely state that "[t]he court's oral findings of fact of September 25, 1987, are hereby incorporated by reference herein." Because of this, we have been required to do what the attorney should have done: sort out findings from the trial court's oral remarks.

 ■ We will not tolerate the practice of incorporating a court's remarks into the findings. CR 52 requires written findings. This means formal findings on all disputed facts. CR 52(a)(1); CR 52(a)(4). *See State v. Kingman,* 77 Wn.2d 551, 463 P.2d 638 (1970). Absence of findings undermines the conclusions of law. *Sandler v. United States Dev. Co.,* 44 Wn. App. 98, 721 P.2d 532 (1986); *State v. Poirier,* 34 Wn. App. 839, 664 P.2d 7 (1983). Also, absence of a finding will be taken as a negative finding on the issue. *Smith v. King,* 106 Wn.2d 443, 451, 722 P.2d 796 (1986); *Golberg v. Sanglier* 96 Wn.2d 874, 880, 639 P.2d 1347, 647 P.2d 489 (1982); *Pilling v. Eastern & Pac. Enters. Trust,* 41 Wn. App. 158, 165, 702 P.2d 1232, *review denied,* 104 Wn.2d 1014 (1985). We consider it the prevailing party's duty to procure formal written findings supporting its position. Prevailing parties must fulfill that duty or abide the consequences of their failure to do so.

The record and the court's oral remarks disclose that the Bank has been doing business with Mrs. Higgerson, Birney's sole shareholder, and with Birney's itself for many years. In fact, Mrs. Higgerson's restaurant business was incorporated largely at the Bank's suggestion, but she continued to own the commercial property in which the business was conducted. Although the Bank suggested that the corporation "rent" the property, Birney's tenancy was pursuant to unrecorded written leases.

Over the years, the Bank made several loans to Birney's and Mrs. Higgerson personally guaranteed them. When

---

[1]That attorney did not participate in this appeal.

Birney's experienced financial trouble in 1982, the Bank made a personal loan to Mrs. Higgerson and took a deed of trust on the property. The Bank performed land title and U.C.C. searches, which disclosed nothing, but it did not ask any questions of Mrs. Higgerson or anyone else concerning the nature of Birney's tenancy. Although Mrs. Higgerson did not volunteer anything about the tenancy, the trial court found that she would have produced the lease for examination if asked. The unrecorded lease in effect at the time the Bank took the deed of trust was for a 20–year term at $1,200 per month.

The trial court rejected the Bank's contention that the lease was a fraudulent conveyance, and its oral remarks indicate its belief that the lease was reasonable and valid on its face. Also, there has been no contention that Mrs. Higgerson used the corporation as an alter ego or that the corporation is, indeed, anything but what it purports to be: a legal entity separate from that of its shareholders.

The following remarks of the trial court, which we denominate as findings, appear to be pivotal to the court's decision:

> Mr. Gwynn [the loan officer] assumed Mrs. Higgerson was renting from herself . . .
>
> In 80 percent of the commercial loans that Mr. Gwynn is involved in there is a closely held business that is incorporated and owned by the operator of the business who also personally owns the real property on which the business is located and who rents the real property to the corporation without a written lease. This general arrangement is used for tax purposes. . . .
>
> In such a closely held situation Mr. Gwynn is unconcerned about the rental arrangements so long as the individual business operator personally guarantees the loan made to the corporation.

These "findings," together with the facts that the Bank's borrower was the sole shareholder of the corporate lessee and the Bank had a long history of loaning to the corporation on personal guaranties from Mrs. Higgerson, appear to

form the basis for the trial court's apparent "conclusion of law" set forth in its oral remarks as follows:

> The information Mr. Gwynn had available to him was that which ordinarily shows a closely held business arrangement where the closely held corporation rents with no written lease, the business premises from the individual who also controls the corporation. The bank had no reason to be concerned by that arrangement prior to the loan to Mrs. Higgerson because Mrs. Higgerson personally guaranteed the loans to the corporation. When the so–called transfer of the loan was arranged from the corporation to Mrs. Higgerson with the bank taking security in the business premises, the bank exercising ordinary prudence, having the information that it did and seeking to assure that there were no prior claims to the security, made a title check and found no other prior claims. The Plaintiff had no information that would put it on notice that the situation was different from the "ordinary one" where there is no long term undesirable lease attached to the porperty [sic]. The information disclosing the rental expenses to the corporation and rental income to Mrs. Higgerson is consistent with the ordinary situation, as is also the information from the corporation revealing leasehold improvements.[2] The loan to the corporation for remodling [sic] in 1979 would not reasonably lead the plaintiff to inquire in 1982 whether the apparently ordinary situation was different.

The unrecorded lease was binding between the lessor and lessee. *Nichols v. DeBritz,* 178 Wash. 375, 35 P.2d 29 (1934). Being unrecorded, however, pursuant to RCW

---

[2]The court was apparently referring to the following "findings":

"In 1979 the Plaintiff had loaned a substantial sum of money to the corporation for remodeling the business premises. Mrs. Higgerson guaranteed that loan. . . .

"Prior to making the loan to Mrs. Higgerson, the Plaintiff had available to it financial statements from Mrs. Higgerson and from the corporation. The financial statements of the corporation revealed rental expense and Mrs. Higgerson's revealed rental income. The financial statements of the corporation revealed "Leasehold Improvements" and I'm going to read the abbreviation that is in the financial statement, 'allow for amort–leasehold 1M' that is contained in Exhibit 4. . . ."

65.08.070 it was not binding on a bona fide purchaser.[3] The fundamental issue, therefore, is whether the Bank was a bona fide purchaser, *viz*: a purchaser without notice of the lease. *Glaser v. Holdorf,* 56 Wn.2d 204, 352 P.2d 212 (1960). We hold that it was not.

■ The long established Washington rule was firmly stated in *Nichols v. DeBritz, supra,* as follows:

> The actual possession of the property by the appellant at the time the respondent's mortgage was filed for record was notice to him of whatever rights a prudent and reasonable inquiry would have revealed. The purchaser in such cases takes title subject to every right of the occupant that a reasonable inquiry would have disclosed. This rule applies as well to the nature of the tenure as to the quantity of land claimed by the party in possession.

178 Wash. at 380. *See also Karlsten v. Hamel,* 123 Wash. 333, 212 P. 153 (1923); *Bendon v. Parfit,* 74 Wash. 645, 134 P. 185 (1913).

Birney's had the burden of proving that the Bank had notice. *Glaser,* 56 Wn.2d at 209. Plainly, however, that burden has been met insofar as the fundamental application of the rule is concerned: Birney's, a legal entity separate from the property owner, was quite visibly in possession of the property when the Bank acquired its interest. The remaining question is whether the Bank was somehow excused from asking the single question it failed to ask: what is the nature of Birney's tenancy? Put differently, was the Bank's omission reasonable and prudent? Again, we hold that it was not.

---

[3]RCW 65.08.070 provides:

"**Real property conveyances to be recorded.** A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record."

The Bank contends that whether it should have inquired is a question of fact, citing, as examples, *Glidden v. Municipal Auth.*, 111 Wn.2d 341, 758 P.2d 487, 764 P.2d 647 (1988); *Miebach v. Colasurdo,* 102 Wn.2d 170, 685 P.2d 1074 (1984). The thrust of the argument is that we should accept as fact the court's conclusion concerning the Bank's prudence, as appellate tradition demands. We disagree.

The Bank's contention is only partly true, and the cited cases do not support its position. *Glidden* refers only briefly, without discussion or citation of authority, to "the questions of fact." 111 Wn.2d at 350. *Miebach* refers to the issue as involving a mixed question of law and fact. 102 Wn.2d at 175. Analysis of these and other cases reveals that what the purchaser knew is, indeed, a question of fact, but the legal significance of what he knew is a question of law. *See, e.g., Field v. Copping, Agnew & Scales,* 65 Wash. 359, 118 P. 329 (1911) (finding that appellant did not know of a possessor's claim an erroneous conclusion of law in view of the physical facts).

We find a twofold error in the trial court's analysis: (1) unwarranted confusion between Mrs. Higgerson and Birney's separate legal persona; and (2) the court's conclusion that the Bank was permitted to forgo an inquiry because of (a) its assumptions based on usual lending experiences, and (b) its lack of concern because of reliance, in making loans, on a personal guaranty. As we have already noted, there was no basis in this case for confusing the corporation with its shareholders, and the Bank's assumptions and reliance were irrelevant because the applicable standard is that of a prudent purchaser of property. *Nichols v. DeBritz, supra.*

We have found no case excusing inquiry where possession is visible and evident. To the contrary, inquiry notice has uniformly been required of the "purchaser" in such cases, absent special circumstances, *chargeable to the possessor,* excusing inquiry. *See, e.g., Karlsten v. Hamel, supra* (oral lease of hotel binding on purchaser). Compare *Paganelli v. Swendsen,* 50 Wn.2d 304, 311 P.2d 676 (1957) (vacant buildings not evidence of possessory rights); *Woodman v.*

*Fitzsimmons,* 120 Wash. 136, 206 P. 963 (1922) (wife who knew property in husband's name not in possession merely because she collected rent from tenants); *Murry v. Carlton,* 65 Wash. 364, 118 P. 332 (1911) (party in possession must be without fault). In this case, there simply are no special circumstances chargeable to Birney's that excused the Bank from the inquiry required because of Birney's visible possession.

Reversed.

ALEXANDER, C.J., and PETRICH, J., concur.

Reconsideration denied September 18, 1989.